**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Thomas P. FRERICHS, Respondent.**

**No. 03–1030.**

Supreme Court of Iowa.

Nov. 13, 2003.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Clemens A. Erdahl, Cedar Rapids, for respondent.

CADY, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct charged Thomas P. Frerichs with numerous violations of the Iowa Code of Professional Responsibility for Lawyers stemming from an attorney fee contract in a criminal case and his conduct in representing a client in a business transaction, as well as his dealings with the Board in responding to notice of the complaints. The Grievance Commission of the Supreme Court of Iowa found that Frerichs violated the Code of Professional Responsibility as charged by the Board. It recommended Frerichs re-ceive a public reprimand. On our review, we find Frerichs violated the Code of Professional Responsibility and impose an indefinite suspension of not less than four months.

## I. Background Facts and Proceedings.

Thomas Frerichs is a lawyer in Waterloo. He was admitted to the practice of law in Iowa in 1990. He primarily engages in trial work, mostly involving criminal cases and civil rights litigation. He is a legal liaison for the NAACP and handles many cases each year on a pro bono basis. He was privately admonished in 1999 for failing to provide an accounting of a retainer fee from a client.

The evidence presented at the hearing before the Commission centered on the conduct of Frerichs in two separate cases. In one matter, Frerichs entered into a written attorney fee contract with Alice Smith on March 8, 2000. Smith's son had been charged with drug and firearms crimes in two counties, and Smith agreed to pay his legal fees. The contract provided for a minimum fee of $10,000, with a $20,000 retainer. One-half of the retainer was due upon execution of the contract, and the remaining portion of the retainer was due ten days later. The $10,000 minimum fee was deemed earned under the terms of the contract upon execution of the agreement. The contract provided:

> The minimum fee is based upon the time, skill involved, the experience, reputation and ability of the lawyers, how this case may impact on other cases that cannot be taken because of time commitments required herein, time limitations imposed by the client or the case itself and other proper factors. It is not the desire of the attorney to impact the Client's absolute right to freely discharge Client's attorney or to in anyway

impede client[']s rights to discharge attorney.... Although client will receive credit against the minimum fee based upon rates of $150.00 [per hour] for Thomas P. Frerichs ... a minimum fee will be deemed earned upon execution of this contract.

Smith paid the $20,000 retainer required under the contract, in addition to an earlier retainer of $1500.

Frerichs and his firm performed work in both criminal cases, which were ultimately resolved by plea bargains. The cases were completed in June and August 2000. Smith's son was sentenced to a term of incarceration. Frerichs did not return any portion of the retainers to Smith. He also did not provide an accounting.

Smith died on March 2, 2001. On March 29, a trustee of a living trust Smith had established telephoned Frerichs' office to inquire about the retainer and to request an accounting. Frerichs did not return the telephone call. The trustee made numerous other attempts to contact Frerichs and obtain an accounting during the following months, but was unsuccessful. The trustee eventually hired a lawyer, who wrote Frerichs and demanded he provide an accounting by October 19, 2001. When Frerichs failed to meet the deadline, the attorney prepared a petition for a court-ordered accounting.

On November 14, 2001, prior to the time the petition was filed, Frerichs provided an accounting. He also returned the unearned portion of the retainer of approximately $11,000, with a check written on his office account.

After the trustee filed a complaint with the Board, the Board sent Frerichs a notice of the complaint by restricted certified mail. After Frerichs failed to claim the notice, the Board personally served him with the notice. This notice informed Frerichs he was required to respond to the Board. Frerichs failed to respond to this notice, as well as a second notice that informed him that the failure to respond was a violation of the ethics code.

The evidence concerning the second complaint against Frerichs arose out of his representation of an individual named Kurtis Meredith. In January 2000, Meredith hired Frerichs to set up a not-for-profit corporation. Meredith owned an education consulting business and sought the nonprofit status to enhance the company's eligibility for grants. Meredith delivered a variety of papers to Frerichs to enable him to perform his legal work. Frerichs assured Meredith he could complete the work by June, as Meredith requested.

Frerichs failed to complete the work and was unable to locate and return the papers Meredith had delivered to him when requested. Over a period of several months, Frerichs repeatedly failed to return telephone calls from Meredith and failed to meet with him concerning the status of his legal work. Meredith's business lost revenue due to Frerichs' failure to perform his services in a timely manner.

In December 2000, the Board sent Frerichs notice of a complaint filed by Meredith. Frerichs failed to respond. He eventually filed a response after the Board sent him two additional notices.

Frerichs did not contest the core facts presented at the hearing concerning the two complaints. He testified, however, that he originally placed the second $10,000 retainer from Smith into his trust account and later mistakenly transferred it into his general account. He placed the first $10,000 retainer into his general account because he considered it to be earned when he received it under the contract.

Frerichs further testified that he learned he had cancer in March 2001, re-

sulting in two surgeries and treatment. Frerichs also suffered from depression and anxiety. He has been placed on medication and his prognosis is good.

## II. Board Complaint.

The Board charged Frerichs with numerous violations of the rules of professional responsibility. In the first count of the petition, it claimed Frerichs violated Code of Professional Responsibility Disciplinary Rule (DR) 1–102(A)(4), (5), and (6) (conduct involving dishonesty, deceit, or misrepresentation, conduct prejudicial to the administration of justice, and conduct reflecting adversely on one's fitness to practice law); DR 2–106(A) (charging a clearly excessive fee); DR 9–102(A) (failure to place client funds in a trust account); DR 9–102(B)(3) and (4) (failure to provide accounting and failure to properly return funds to client); and DR 9–103(A) (failure to maintain records to show compliance with DR 9–102). In the second count of the petition, the Board charged Frerichs violated DR 1–102(A)(5) and (6); DR 6–101(A)(3) (neglect of client matter); DR 7–101(A) (failure to seek client's lawful objectives and failure to carry out employment); and DR 9–102(B)(3) and (4). The Board also claimed Frerichs violated DR 1–102(A)(5) and (6) by failing to cooperate with its investigation.

The Commission found the Board established the violations as set forth in the complaint and recommended a public reprimand.

## III. Scope of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard*, 653 N.W.2d 373, 375 (Iowa 2002). "We are not bound by the findings of the Commission, but give them weight." *Id.*

## IV. Violations.

We begin by considering the ethical considerations of a minimum fee contract. We have previously held that it is unethical for a lawyer to enter into a fee contract providing for a nonrefundable advance fee unless the advance fee constitutes a general retainer. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 58 (Iowa 1998). Thus, contracts providing for nonrefundable special retainers and nonrefundable "flat" fees are void as well as unethical. *Id.*; *see* Iowa Code of Prof'l Responsibility DR 2–106(A). All advance fee payments other than general retainer fees are refundable, despite contractual language to the contrary, and must be placed in a client trust account. *Apland*, 577 N.W.2d at 55–56. Furthermore, these fees may not be withdrawn until earned. *See id.* at 56. A lawyer misappropriates client funds in violation of DR 1–102(A)(3), (4), (5), and (6) when special retainers and flat fees paid in advance are treated as money belonging to the lawyer and not maintained in a trust account until the fee has been earned. *See id.* at 55–56.

These principles gleaned from *Apland* tell us that whether Frerichs' conduct surrounding the fee charged in this case was unethical hinges on the nature of the advance fee he received. Thus, we must consider the type of fee at issue in this case.

In *Apland*, we observed that advance fees could be categorized as general retainers or special retainers. *Id.* at 54–55. A general retainer is money paid to an attorney in return for making legal services available as needed during a specific period of time. *Id.* at 54. It is the nature of an option contract that the client may exercise, and provides compensation to the attorney for agreeing to make legal

services available and for foregoing the opportunity to be hired by the client's adversary or other potential clients based on a conflict of interest. *See id.* at 57. Under general contract analysis, the general retainer fee is earned when paid because the payment is given in consideration for the lawyer's availability, not as compensation for other services. *See* Lester Brickman & Lawrence A. Cunningham, *Nonrefundable Retainers Revisited,* 72 N.C. L. Rev. 1, 25 (1993). Thus, the attorney is entitled to the money even if no services are actually performed for the client. *Apland,* 577 N.W.2d at 54. This means the lawyer has no obligation to later refund the money. Moreover, the attorney is entitled to retain the fee even if discharged by the client. Brickman & Cunningham, 72 N.C. L. Rev. at 25.

■■■■■ In contrast, a special retainer is money paid to an attorney in advance of performing a specific service. *Apland,* 577 N.W.2d at 55. Under this arrangement, the attorney typically withdraws money pursuant to an agreed hourly fee from the advance funds as legal services are rendered. *See id.* However, the advance funds can also consist of a fixed or flat fee, representing the total compensation for all the work to be done in the case. *Id.* Nevertheless, the fee advanced under either arrangement is considered to be a special retainer. *Id.* at 56. As opposed to general retainers, special retainers represent money that still belongs to the client after it is paid to an attorney and must be deposited in a client trust account. *Id.* at 55–56. Analytically, the advance fee is

earned once the service is performed, and is either paid over time or after the service is completed. If the fee arrangement provides for the fee to be drawn from the retainer amount as services are performed, any unearned amount of the retainer must be returned to the client. If the retainer was a fixed or flat fee under the contract, it is still possible the retainer, or a portion of the retainer, would need to be refunded to the client in the event the attorney-client relationship is terminated before the services are rendered.[1] Therefore, under both advance and flat fee arrangements, the special retainer must be placed in a client trust account. Otherwise, the client's right to discharge an attorney at any time would be undermined because clients would be reluctant to exercise the right if an advance fee was nonrefundable. *See id.* at 57. A nonrefundable retainer would also undermine the fiduciary nature of an attorney-client relationship. *Id.*; Brickman & Cunningham, 72 N.C. L. Rev. at 8–12.

■■■ We recognized in *Apland* that the distinction between general and special retainers can be less than clear, and some retainers can be in the nature of a hybrid between the two. *Apland,* 577 N.W.2d at 57. In considering where the line will be drawn and how hybrid arrangements will be treated, we do not rely upon contract terminology, but will scrutinize the agreements with the presumption that the advance fee was a special retainer and was not given for attorney availability that justifies a general retainer. *Id.*

The contract in this case specifically provided that the $10,000 minimum fee recog-

---

**1.** It is also possible that a portion of a lump sum "flat" fee in a criminal case would need to be refunded as excessive. Lester Brickman & Lawrence A. Cunningham, *Nonrefundable Retainers Revisited,* 72 N.C. L. Rev. 1, 31–32 n. 121 (1993). Lump sum fee arrangements in criminal cases can not only give rise to the same ethical concerns as nonrefundable advance fees, but can also present other conflicts founded in attorney overreaching and other conduct contrary to effective representation. *Id.* at 31–32. A criminal defense lawyer must be careful to ensure that the lump sum fee does not suggest self-interest or overreaching.

nized that the attorney may be required to forego taking other cases due to the time commitment required by the case, as well as the time limitations the case would impose on the lawyer. It further provided that the minimum fee was not intended to impede the client's right to terminate the attorney-client relationship at any time.

Although this contract language mentioned factors characteristic of a general retainer, it was clearly insufficient to overcome the presumption of a special retainer. The contract addressed availability, but not in the manner used to justify a general retainer. The stated elements of compensation for the nonrefundable minimum fee in the contract included both the time limitations imposed on the lawyer by the case, as well as how the time commitments of the case would inhibit the ability of the lawyer to accept cases from other clients. However, availability in this context amounted to nothing more than the ethical obligation imposed on all lawyers when they agree to provide legal services to a client. Brickman & Cunningham, 72 N.C. L. Rev. at 24. A lawyer who agrees to perform legal services also necessarily agrees to be available to perform those services. *Id.* Thus, this type of availability is unrelated to the type of availability of a general retainer and is insufficient to justify a nonrefundable minimum fee. *Id.* at 24–27. Moreover, informing a client that the imposition of a minimum fee is not intended to alter their client's right to freely discharge the attorney does not lessen the penalty imposed for exercising the right, or alleviate the inconsistency between a nonrefundable advance fee and the trust-based aspect of the absolute right to discharge an attorney. *See Apland,* 577 N.W.2d at 57.

In practice, we believe it would be very difficult to properly characterize a nonrefundable advance minimum fee to repre-

sent a client in a specific case as a general retainer. *See* Brickman & Cunningham, 72 N.C. L. Rev. at 25–26. As a special retainer, the advance fee must be placed in a client trust account and withdrawn only for completed services. We emphasize that this is an area of the law that is subject to overreaching, and it is critical for lawyers to comply with the rules of ethics and scrupulously maintain the trust and confidence of the attorney-client relationship.

We conclude Frerichs entered into an illegal fee agreement in violation of DR 2–106(A). He also failed to place the advance fee in a trust account and misappropriated client funds in the process in violation of DR 9–102(A) and DR 1–102(A)(4). The evidence also supports a finding that Frerichs failed to account for and properly deliver client funds in violation of DR 9–102(B) and DR 9–103(A). Frerichs violated these disciplinary rules when he stonewalled efforts by the trustee to obtain an accounting.

Regarding the representation of Meredith, we conclude Frerichs neglected client matters and failed to properly safeguard client property in violation of DR 6–101(A)(3), DR 7–101(A), and DR 9–102(B). Such conduct also reflects adversely on the fitness of an attorney to practice law. *See* DR 1–102(A)(6). Frerichs also compounded matters in both complaints by failing to cooperate with the Board investigation in violation of DR 1–102(A)(5) and (6). We turn to consider the discipline to impose.

### V. Discipline.

Our general principles governing attorney discipline have been recited in prior decisions. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters,* 646 N.W.2d 111, 113–14 (Iowa 2002). Along with these considerations, personal circumstances such as depression and health problems are also considered. *See*

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold,* 642 N.W.2d 288, 295 (Iowa 2002); *Comm. on Prof'l Ethics & Conduct v. Robinson,* 458 N.W.2d 393, 394 (Iowa 1990). We also give consideration to the recommendations of the Commission. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams,* 623 N.W.2d 815, 818 (Iowa 2001). Additionally, we do not overlook an attorney's devoted service to the profession. *See Comm. on Prof'l Ethics & Conduct v. Conzett,* 476 N.W.2d 43, 45–46 (Iowa 1991). Yet, in the end, the discipline imposed in each case is based on its own facts, viewed in light of our recognized factors and considerations. *Bernard,* 653 N.W.2d at 376.

The circumstances in this case involve three basic categories of unethical behavior: charging an unethical and illegal fee, neglect, and failure to cooperate with the Board. The neglect embraces trust account violations, failure to complete client work, and failure to safeguard client property. Considering we explained how advance fee payments must be handled two years prior to the time Frerichs entered into the illegal contract, his conduct in charging an illegal fee constitutes a serious breach of professional ethics. *See Apland,* 577 N.W.2d at 60 (fee violation considered less serious because attorney was without advance court guidance).

Although each case is viewed individually, we recently considered a disciplinary case that bears some resemblance to this case. *See Adams,* 623 N.W.2d 815. In *Adams,* we determined that unethical conduct involving neglect of a client matter, failure to deposit a retainer and advances into a trust account, failure to account for client property, and misrepresentations to a client to cover up neglect, warranted a three-month suspension, particularly in light of a prior reprimand, notwithstanding evidence that the attorney was suffering from depression. *Id.* at 818–19. Although

Adams had received a prior reprimand, while Frerichs' prior proceeding resulted in an admonition, both prior actions concerned some of the same conduct involved in the more recent actions. *See id.* at 819; *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski,* 606 N.W.2d 11, 14 (Iowa 2000) (prior private admonition considered in imposing sanctions); *Comm. on Prof'l Ethics & Conduct v. Liles,* 430 N.W.2d 111, 113 (Iowa 1988) (admonitions are a less severe disposition than reprimands).

In many ways, the ethical violations committed by Frerichs were more serious than those documented in the *Adams* case. Unlike *Adams,* the unethical conduct in this case included an illegal or unethical fee arrangement and involved two separate clients who were harmed in two different ways by the conduct. Moreover, Frerichs repeatedly failed to cooperate with the disciplinary process in two separate cases.

In view of all the relevant factors and the aggravating and mitigating circumstances, we conclude that Frerichs should be indefinitely suspended from the practice of law in this state with no possibility for reinstatement for four months. This suspension applies to all facets of the practice of law. Iowa Ct. R. 35.12(3). Upon application for reinstatement Frerichs shall have the burden to prove that he has not practiced law during the period of suspension and that he meets all the requirements of Iowa Court Rule 35.13. Costs of this action shall be taxed to Frerichs pursuant to rule 35.25(1).

**LICENSE SUSPENDED.**

All justices concur except WIGGINS, J., who takes no part.