**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**
Complainant,

v.

**Nyaradzai M. KADENGE, Respondent.**

No. 05–1249.

Supreme Court of Iowa.

Dec. 2, 2005.

404

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Max E. Kirk of Ball, Kirk & Holm, Waterloo, for respondent.

STREIT, Justice.

An attorney comes before us because of his neglect of his clients' matters and his problems with alcohol. The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint against the respondent, Nyaradzai M. Kadenge, alleging he had violated several provisions of the Iowa Code of Professional Responsibility by neglecting legal matters entrusted to him, by mishandling his trust account, by making misrepresentations, by being intoxicated in court, and by failing to respond to inquiries from the Board. The Grievance Commission found the Board proved the alleged violations and recommended we suspend Kadenge's license to practice law for six months.

We find the Board proved the ethical violations. Based on the seriousness and number of violations we believe an eighteen-month suspension is warranted.

## I. Facts and Prior Proceedings

Nyaradzai M. Kadenge graduated from the University of Iowa Law School in 1993 and spent several years clerking for both the federal and state courts. He spent two years in the public defender's office, and started practicing on his own in Waterloo in late 1997 or 1998. Within the next few years, Kadenge bought an interest in two bars. He soon began to show signs of alcohol abuse. At times he would spend long periods of time out of the office, neglecting his clients and pending cases. His alcohol problems came to the forefront on July 11, 2003 when he appeared for a sentencing matter before Associate District Court Judge Nathan Callahan in an intoxicated state. Kadenge was charged with public intoxication and pled guilty to the charge.

This matter came before the Grievance Commission upon a complaint filed by the Iowa Supreme Court Board of Professional Ethics and Conduct ("Board") in May of 2004. The complaint alleged ethical violations in five areas: Kadenge repeatedly mishandled his trust account, neglected his responsibilities to his clients, failed to respond to the Board's complaints, made misrepresentations, and was arrested and convicted for public intoxication when he appeared in court for a client's sentencing hearing.

In June of 2005, the Grievance Commission held a hearing regarding Kadenge's conduct. Kadenge testified candidly about his struggle with alcoholism and depression, but still cast blame for many of his violations on his support staff, the attorney with whom he shared an office, and his clients.

The Grievance Commission found Kadenge had repeatedly violated the Iowa Code of Professional Responsibility for Lawyers. The Commission recommended we order Kadenge pay a former client, Ismet Sadikovic, the balance of a judgment rendered against him in the amount of $2000. It also recommended we order Kadenge refund Deborah Sallis's retainer of $1000. See Iowa Ct. R. 35.9 ("the commission may recommend additional ... sanctions such as restitution"). Finally, it recommended we suspend his license to practice law for six months.

## II. Standard of Review

 We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth,* 656 N.W.2d 93, 97 (Iowa 2002); Iowa Ct. R. 35.10(1). We give respectful consideration to the Commission's findings and recommendations, but are not bound by them. *See Iowa Supreme Ct. Bd. of Prof'l Ethics*

*& Conduct v. Bell,* 650 N.W.2d 648, 650 (Iowa 2002) (revoking license even though Commission recommended five-year suspension).

The Board must prove attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold,* 642 N.W.2d 288, 293 (Iowa 2002). This burden is "less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett,* 674 N.W.2d 139, 142 (Iowa 2004). "On review we may adopt, increase, or reduce the sanction recommended by the commission." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Eich,* 652 N.W.2d 216, 217 (Iowa 2002).

### III. Factual Findings

Based upon Kadenge's admissions and the evidence presented to the Grievance Commission concerning the various ethical violations, we make the following factual findings:

### A. The Roth Matter

Gerald Roth paid Kadenge a $500 retainer for representation in a small claims suit filed against Roth in Wisconsin. The retainer was never placed in a client trust account. Kadenge was not licensed to practice in Wisconsin, and he did not attempt to be admitted in Wisconsin pro hac vice. Kadenge assisted Roth in drafting an answer to the small claims petition, but he did not provide further assistance until the day of trial when he desperately tried to find an attorney to represent Mr. Roth in Wisconsin. Kadenge was unable to find an attorney, and a default judgment was entered against Mr. Roth in the amount of $2200. This judgment was paid by Kadenge. Mr. Roth filed a complaint with the Board. Kadenge did not reply to the Board's first and second notices of the complaint. He replied to the third notice, but failed to reply to further inquiries into the matter.

### B. The Sadikovic Matter

Ismet Sadikovic hired Kadenge to represent him in a workers' compensation case against his employer. The deputy industrial commissioner decided against Sadikovic. Although Kadenge had originally agreed to represent Sadikovic on a contingent fee basis, Sadikovic wrote Kadenge a check for $3000 to handle the appeal to the industrial commissioner. Kadenge deposited the $3000 in his general firm account but did not file the appeal. Sadikovic filed a complaint with the Black Hawk County Bar Association Ethics and Grievance Committee and brought a legal malpractice case against Kadenge. Kadenge and Mr. Sadikovic settled on the legal malpractice claim with Kadenge agreeing to pay Mr. Sadikovic $5000. At the time of the Commission's hearing Mr. Sadikovic had still not received $2000 of the agreed settlement amount. Kadenge failed to respond to the first, second, and third notices of this complaint by the Board.

### C. The Sallis Matter

Kadenge agreed to represent Deborah Sallis on a civil rights matter against multiple defendants. Kadenge filed the suit in the United States District Court for the Northern District of Iowa without being admitted to practice there. After receiving two right-to-sue letters, Kadenge became confused by the corresponding case numbers and lost the opportunity to sue one of the defendants. The entire suit was eventually dismissed after Kadenge failed to resist a motion to dismiss.

### D. The Begic Matter

Mirsad Begic hired Kadenge to represent him on a workers' compensation

claim. After filing the claim and beginning discovery, Kadenge stopped returning Begic's phone calls. Begic contacted another attorney to determine the status of his claim. This attorney discovered the claim had been dismissed due to Kadenge's failure to respond to discovery requests and subsequent failure to respond to a motion to dismiss. When confronted, Kadenge denied the claim had been dismissed and claimed it was still progressing as planned. Kadenge eventually admitted the claim was dismissed, and blamed the dismissal on the fact he had not been able to contact his client to complete discovery. Begic contemplated filing a claim for malpractice. Kadenge made a false representation to Begic's new attorney claiming he had malpractice insurance, when, in fact, he knew he did not.

### E. The Lenius Matter

Kadenge was hired to attempt to rectify an adverse custody ruling regarding Audrey Delagardelle, the daughter of Stephanie Lenius. The district court had recently issued an order awarding primary physical care of Audrey with her father, Blake Delagardelle. The court had also ordered Lenius to pay child support. Lenius's original attorney filed a motion to reconsider the court's ruling on child support. Kadenge, having only discussed the matter with Lenius's mother, filed an additional motion on Lenius's behalf to reconsider the custody ruling. The court issued one order overruling both motions to reconsider. Kadenge did not read the entire order and he did not realize the court had also rejected his motion to reconsider. More importantly, he did not inform Lenius of the court's adverse decision, and she missed the deadline to file an appeal.

### F. The Cox Matter

Shane Cox filed a complaint with the Board alleging Kadenge failed to render an accounting of his services and failed to refund the unearned portion of his $2500 retainer. The Commission found his representation of Mr. Cox was substantial and disagreed with Mr. Cox's contention that Kadenge had not earned the full amount of the retainer. However, even if Kadenge earned the full amount of the retainer, he did not earn the entire $2500 at the beginning of his representation. This money should have been deposited in his client trust account until it was actually earned. In addition to this trust account violation, the Commission determined Kadenge did not render an accounting and he failed to respond to the various notices of the complaint served upon him.

### G. Appearance in Court While Intoxicated

In July of 2003, Kadenge appeared before Judge Nathan Callahan for a client's sentencing hearing. Kadenge was staggering, his voice was slurred, and his breath smelled of alcohol. Judge Callahan confronted Kadenge, but Kadenge denied he had been drinking. Judge Callahan asked him to take a preliminary breath test and Kadenge agreed. The breath test indicated an alcohol concentration in excess of .10. Kadenge was charged with, and pled guilty to, the misdemeanor offense of public intoxication.

### H. Other Matters

Kadenge mishandled his trust account by bouncing checks on the account. Although the checks did not constitute large sums of money, they were illustrative of a continuous mismanagement of his trust account.

The Commission found no basis in the claim of Senad Traljesic because Mr. Traljesic did not testify at the hearing and the

Board did not present any other evidence beyond the initial complaint. In addition, the Commission found no ethical violation in Steve Miller's claim Kadenge had mishandled his personal injury case. Kadenge clearly sued the wrong defendant, but there was no ethical violation beyond failing to respond to the ethical complaints served upon him.

## IV. Ethical Violations

### A. Client Funds

■ We begin by considering the ethical violations surrounding the mishandling of his trust account. We have previously held all advance fee payments other than general retainer fee payments are refundable and must be placed in a client trust account. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 54–56 (Iowa 1998). These fees may not be withdrawn until earned. *Id.* at 56. Kadenge presented no written agreements identifying payments from Roth, Sadikovic, and Cox as general retainers, and no other evidence beyond vague testimony indicating he thought Mr. Roth wanted to set up a general retainer. We find these payments were intended to be either a special retainer or a flat fee arrangement. *See id.* at 57 (stating the court will scrutinize such agreements with the presumption the advance fee was a special retainer). We have made abundantly clear a lawyer "misappropriates client funds in violation of DR 1–102(A)(3), (4), (5), and (6) when special retainers and flat fees paid in advance are treated as money belonging to the lawyer and not maintained in a trust account until the fee has been earned." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs*, 671 N.W.2d 470, 475 (Iowa 2003). On multiple occasions, Kadenge did not deposit funds from his client in his trust account. Instead, he deposited these funds directly in his general office account before they were earned. We find Kadenge mishandled his trust account in violation of DR 9–102(A)(2) ("Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited in [a trust] account ...."), and 9–102(B)(3) (stating a lawyer shall "[m]aintain complete records of all funds ... of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them"). Specifically, he mishandled trust accounts in the Roth matter and the Cox matter when he deposited client funds in a general office account before they were actually earned. In the Sadikovic matter his activities were particularly egregious because he deposited client funds in his general firm account even though he never filed the appeal. This ethical violation exemplifies why a severe sanction is necessary in this case.

### B. Neglect

■ We next consider the numerous allegations of neglect. We have previously defined professional neglect "to involve indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004). Kadenge neglected the Sallis matter in violation of DR 6–101(A)(3) ("A lawyer shall not ... [n]eglect a client's legal matter."), by failing to resist a motion to dismiss. Kadenge similarly neglected the Begic matter by failing to respond to discovery requests and a motion to dismiss. Kadenge also neglected the Lenius matter because he failed to tell his client of the court's adverse decision and he failed to tell her she had an opportunity to file an appeal. In considering the nature of the violations in these matters, we note the

dilatory handling of client matters is a disservice not only to the client, but also to the judicial system and is a violation of DR 1–102(A)(5) ("A lawyer shall not ... [e]ngage in conduct that is prejudicial to the administration of justice.").

## C. Failure to Cooperate with the Board

■ We have repeatedly emphasized how important it is for an attorney to cooperate with disciplinary authorities when a complaint has been filed against the attorney. *See Comm. on Prof'l Ethics & Conduct v. Horn,* 379 N.W.2d 6, 8–9 (Iowa 1985) (holding "a failure to respond to an investigation committee's request for an answer to a complaint is deemed a separate act of misconduct subjecting the attorney to discipline"). "An attorney who ignores Board inquiries only exacerbates matters." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy,* 684 N.W.2d 256, 260 (Iowa 2004). Kadenge was uncooperative with the Board. He ignored nearly every request to respond to pending ethical complaints. By failing to answer the Board's complaints and by failing to fully comply with discovery requests, Kadenge wasted the Board's valuable time and limited assets. His lack of cooperation also prejudiced the Board's ability to gather all pertinent facts regarding the complaints. We find his actions clearly violated DR 1–102(A)(5) ("A lawyer shall not ... [e]ngage in conduct that is prejudicial to the administration of justice."). *Comm. on Prof'l Ethics & Conduct v. Bromwell,* 389 N.W.2d 854, 857 (Iowa

1986) (holding failure to respond to grievance committee violates the proscription against conduct prejudicial to administration of justice).

## D. Misrepresentation to Member of the Bar

■ Kadenge's neglect in the Begic matter is compounded further by a misrepresentation to another member of the bar. Kadenge intentionally misled Begic's new attorney who was investigating a potential malpractice claim against Kadenge. Kadenge deceived Begic's new attorney when he said he had malpractice insurance and identified the name of an insurance carrier. While this violation is not as serious as a misrepresentation made to the court, or to another attorney during a pending case, it nevertheless was a fundamental violation of our code of ethics. *See* DR 1–102(A)(4) ("A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation.").

## E. Appearing in Court While Intoxicated

■ Kadenge's appearance in court in an intoxicated condition was a violation of numerous provisions of our ethics code: DR 1–102(A)(1) (violation of disciplinary rule), DR 1–102(A)(5) (conduct that is prejudicial to the administration of justice), and DR 1–102(A)(6) (conduct that adversely reflects on fitness to practice law).[1] Kadenge also made a misrepresentation to the court in violation of DR 1–102(A)(4) (conduct involving dishonesty, fraud, de-

---

1. The Board did not allege violations of DR 6–101(A)(1) (a lawyer shall not "[h]andle a legal matter which the lawyer ... should know that the lawyer is not competent to handle"), DR 6–101(A)(2) (a lawyer shall not handle a matter without preparation adequate in the circumstances), or DR 7–106(C)(6) (a lawyer shall not engage in undignified or discourte-

ous conduct which is degrading to a tribunal when appearing in a professional capacity before a tribunal). Therefore, we do not find such violations in this proceeding. *See Comm. on Prof'l Ethics & Conduct v. Crary,* 245 N.W.2d 298, 304 (Iowa 1976) (restricting ethical violations to those charged in the complaint).

ceit, or misrepresentation) when he told the court he had not been drinking.

Having found multiple violations of our ethics code, we now turn to the appropriate sanction.

### V. Sanctions

 In reaching our decision, we recognize the appropriate sanction must be determined in light of the particular circumstances of each case. *Lett,* 674 N.W.2d at 144. Factors that help guide our determination include "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole and the respondent's fitness to continue in the practice of law." *Comm. on Prof'l Ethics & Conduct v. Blomker,* 379 N.W.2d 19, 21 (Iowa 1985). There is no standard discipline for a particular type of attorney misconduct, and "[e]ach case rests on its own facts, viewed in light of the relevant governing considerations." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard,* 653 N.W.2d 373, 376 (Iowa 2002). However, we do strive to be consistent from one case to another. *See Kennedy,* 684 N.W.2d at 261.

 When neglect of a client's legal matters is the principal violation, discipline generally ranges from a public reprimand to a six-month suspension. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman,* 603 N.W.2d 600, 603 (Iowa 1999). We have typically imposed a period of suspension when the client's case was prejudiced. *See id.* at 604; *Comm. on Prof'l Ethics & Conduct v. Gill,* 479 N.W.2d 303, 305 (Iowa 1991) (three-month suspension when neglect resulted in dismissal of client's appeal); *Comm. on Prof'l Ethics & Conduct v. Havercamp,* 442 N.W.2d 67, 69–70 (Iowa 1989) (six-month suspension when client's civil suit was dismissed); *Comm. on Prof'l Ethics & Conduct v. Ole-*

*son,* 422 N.W.2d 176, 177 (Iowa 1988) (six-month suspension when one client was put in a default situation in a child support action and another client's appeal was dismissed); *Comm. on Prof'l Ethics & Conduct v. Johnson,* 404 N.W.2d 184, 185–86 (Iowa 1987) (six-month suspension when neglect resulted in estates' substantial liability for tax penalties and interest). In the present case, at least three of Kadenge's clients were directly harmed by his neglect-Mr. Sadikovic lost his opportunity to appeal the decision of the deputy workers' compensation commissioner, Mr. Begic's workers' compensation claim was dismissed, and Ms. Sallis lost her opportunity to pursue her civil rights claim. Therefore, we find a suspension is mandated solely for the client neglect.

 In other jurisdictions, sanctions for attorneys appearing intoxicated in court have ranged from public reprimand to disbarment. *See* Danny R. Veilleux, Annotation, *Misconduct Involving Intoxication as Ground for Disciplinary Action Against Attorney,* 1 A.L.R.5th 874 (1992). The degree of sanction corresponds to the amount of harm to the client and the number of times similar situations had happened before. *See id.* Kadenge has never been brought before us for alcohol-related violations, and in this situation, his client was not adversely affected by his intoxication. However, such conduct is still a serious violation of our code of ethics. *See, e.g., Bernard,* 653 N.W.2d at 376 (suspending a lawyer for one year pursuant to his misdemeanor conviction for possession of methamphetamine, neglect of client matters, and his making of a false statement to the Board). It adversely impacts the fitness of a lawyer to practice law and impugns the reputation of the profession as a whole. *Id.*

■ We recognize Kadenge spent twenty-six days at a facility in Minnesota for alcohol abuse and that he has made great strides to overcome this problem, but his recent rehabilitative efforts do not eliminate the need for sanctions in this case. Emotional problems or alcohol use will not excuse negligent or neglectful conduct with respect to one's clients. It will also not excuse trust account violations. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson,* 595 N.W.2d 132, 134 (Iowa 1999) (attorney suspended for two months when ethical violations occurred during a period of depression and active alcoholism); *Comm. on Prof'l Ethics & Conduct v. Haney,* 435 N.W.2d 742, 743 (Iowa 1989) (attorney suspended for three months when dilatory conduct stemmed from his alcoholism).

## VI. Conclusion

■ When assessing the multiple violations, the serious breaches of ethics, the harm done to his clients, his failure to cooperate with the Board in its investigation, and his conviction for being intoxicated in court, we believe the Commission's recommendation of a six-month sentence minimizes the seriousness of what has occurred. We believe the facts of this case require a more severe sanction. We conclude the respondent's license should be suspended for a period of not less than eighteen months. This suspension will preserve the integrity of the profession in the eyes of the public and serve to deter similar conduct. This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3) and requires notification of clients as outlined in Iowa Court Rule 35.21. In addition, upon any application for reinstatement, Kadenge must establish he has paid the balance of the $2000 still owed to Mr. Sadikovic for settlement of his malpractice claim and refunded the $1000 retainer to

Ms. Sallis. Costs are taxed to Kadenge pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**