# IN THE SUPREME COURT OF IOWA

No. 116 / 08–0376

Filed October 3, 2008

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**JAMES P. PIAZZA, SR.,**

Appellant.

On appeal from the report of the Grievance Commission.

Respondent appeals Grievance Commission report in disciplinary proceeding recommending public reprimand. **ATTORNEY REPRIMANDED.**

Michael J. Carroll of Babich, Goldman, Cashatt & Renzo, P.C., Des Moines, for appellant.

Charles L. Harrington and Wendell J. Harms, Des Moines, for appellee.

**PER CURIAM.**

This matter comes before the court on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Attorney Disciplinary Board alleged the respondent, James P. Piazza, Sr., violated ethical rules by collecting an illegal fee, failing to preserve the identity of funds of a client, failing to maintain the required books and records, and engaging in misconduct in his representation of a client. The Grievance Commission found Piazza violated the Iowa Code of Professional Responsibility for Lawyers by failing to deposit the client's money into an interest-bearing trust account and by failing to provide a contemporaneous accounting to the client when that money was withdrawn. The Commission recommends the imposition of a public reprimand. Upon our respectful consideration of the findings of fact, conclusions of law, and recommendation of the Commission, we find the respondent committed several of the charged ethical violations and agree a public reprimand is warranted.

## I. Standard of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 815 (Iowa 2007). The Commission's findings and recommendations are given respectful consideration, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 106 (Iowa 2008). The Board has the burden of proving attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006).

> This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. Once misconduct is proven, we "may

impose a lesser or greater sanction than the discipline recommended by the grievance commission."

*Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)).

## II. Factual Background and Prior Proceedings.

**A. Alberto-Portillo Criminal Matter.** On September 28, 2004, the State of Iowa arrested and charged Noe Alberto-Portillo with conspiracy to deliver methamphetamine, distribution of methamphetamine, and failure to affix a tax stamp. The following day, Piazza, an experienced criminal defense attorney, was contacted by Alberto-Portillo's brother-in-law, Julio Cordoba, about representing Alberto-Portillo. After a consultation with Cordoba, Piazza agreed to the representation. Piazza told Cordoba that he would represent Alberto-Portillo for $7500 if the case stayed in state court, but if the case was transferred to federal court, his fee would be $15,000. Piazza explained the complexity of a federal case warranted the higher fee and that, based on the nature of the charges and Alberto-Portillo's immigration status, the likelihood of transfer to federal court was high. The agreement was not reduced to writing.

Late in the day on Friday, October 1, Cordoba returned to Piazza's office with a woman named Maria Portillo.[1] Maria gave Piazza's receptionist $5000 in cash toward Piazza's fee. The money was not deposited into Piazza's client trust account, but was locked in a desk drawer for safekeeping over the weekend. Piazza was aware on October 1 the $5000 had been paid. He admits he had constructive possession of the money at that time. After the payment was made, Piazza spent several hours in conference with Alberto-Portillo's relatives.

[1]Maria's exact relationship to Alberto-Portillo is uncertain, although she is believed to be his sister-in-law.

Over the weekend, Piazza, who had yet to meet his client or review any trial information or indictment, conducted extensive research to prepare for Alberto-Portillo's preliminary hearing scheduled for October 8. Piazza compiled "the potential anticipated law of the case" concerning conspiracy, entrapment, alibi, and evidentiary issues. He also prepared cross-examination questions of the Department of Criminal Investigations (DCI) agent, even though he was aware that preliminary hearings are generally "very pro forma," and the State is only required to "make out a minimal prima facie case."

On Monday, October 4, Piazza returned to his office where he retrieved the $5000 payment. Believing he had earned all of the $5000 over the weekend, having worked twenty hours at $250/hour, the respondent deposited $4200 in his office bank account and withheld $800 for various personal expenses.

At the preliminary hearing on October 8, Piazza was informed the state charges would be dismissed and the United States was preparing to indict Alberto-Portillo. As a result, the defendant and Piazza waived the preliminary hearing. Over the next few weeks, Piazza continued to work on his client's case. During this time, DCI agents presented Piazza with evidence that supported his client's involvement in the alleged drug activity.

On October 27, Maria returned to Piazza's office with another $2500 in cash. Piazza, believing this amount too had been already earned, took possession of the money and did not deposit it in his client trust account. He also reminded Maria the fee agreement for a federal case was $15,000. When Maria objected, Piazza verbally modified the agreement to $7500, an amount which he claimed had already been totally earned.

On November 2, the United States filed a two-count indictment against Alberto-Portillo, charging him with conspiracy to distribute methamphetamine and distribution of methamphetamine. Piazza continued to represent Alberto-Portillo on the federal charges, meeting with him on several occasions, reviewing evidence, and attempting negotiations with the United States District Attorney, until Alberto-Portillo, dissatisfied with Piazza's representation, requested his withdrawal from the case on April 16, 2005. The request was granted on April 22. Alberto-Portillo eventually entered into a plea agreement and pled guilty to reduced charges.

On April 21, Alberto-Portillo filed a complaint with the Iowa Supreme Court Board of Professional Ethics and Conduct, appellee's predecessor. In addition, Alberto-Portillo filed a request for fee arbitration with the Polk County Fee Arbitration Board. After a hearing on that matter, the Fee Arbitration Board determined Piazza had earned the $7500 paid to him for his representation of Alberto-Portillo.

In his initial response to the Disciplinary Board, Piazza explained the steps he had undertaken in representing Alberto-Portillo as well as the fee arrangement to which the parties agreed. He maintained the fee he received from Alberto-Portillo's family was earned by him "through preparation for trial, including law research, final argument preparations . . ., evaluation of federal evidence, several conferences with the U.S. Attorney, payments to interpreters, meeting with [Alberto-Portillo's] new attorney and sharing information and strategies for trial preparation, and . . . meetings with [Alberto-Portillo's] family."

On October 18, the Disciplinary Board requested additional information from Piazza including proof the $7500 fee had been placed in Piazza's client trust account and proof of the accounting provided to

Alberto-Portillo. In his response, Piazza reiterated the work he had performed on his client's case after receiving each fee installment. He stated he deposited the money in his office account because he believed the money had been earned by the time he had an opportunity to deposit it or, in the case of the second installment, by the time it was received.

Piazza did not provide an accounting for his services until Maria asked for one on December 15, 2005. On December 21, Piazza provided to Maria a statement of "Professional Services" in the Alberto-Portillo criminal matter. The statement contains little detail and no documentation of the hours spent by Piazza on the defendant's behalf. Later, Piazza added handwritten notations to the statement provided to the Disciplinary Board regarding the number of hours spent each day on Alberto-Portillo's representation.

**B. Disciplinary Board's Complaint.** The Board filed its formal complaint against Piazza on September 18, 2007. In its complaint, the Board alleged Piazza's failure to deposit the fee payments in his client trust account and failure to provide an accounting to Alberto-Portillo constituted violations of Iowa Code of Professional Responsibility DR 1–102(A)(4) ("A lawyer shall not . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."); DR 1–102(A)(5) ("A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice."); DR 1–102(A)(6) ("A lawyer shall not . . . [e]ngage in any other conduct that adversely reflects on the fitness to practice law."); DR 2–106(A) ("A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."); DR 7–102(A)(8) ("In the representation of a client, a lawyer shall not . . . [k]nowingly engage in conduct contrary to a disciplinary rule."); DR 9–102(A) ("All funds of clients paid to a lawyer . . . including advances for costs and

expenses, except retainer fees paid on a regular and continuing basis, shall be deposited in one or more identifiable interest-bearing trust accounts maintained as set forth in DR 9–102(C)."); DR 9–102(B)(3) ("A lawyer shall . . . [m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them."); and DR 9–103(A) ("Every lawyer engaged in the private practice of law shall maintain or cause to be maintained on a current basis books and records sufficient to demonstrate compliance with DR 9–102.").

**C. Grievance Commission Findings and Conclusions.** A hearing was held before a division of the Grievance Commission on January 29, 2008. Raymond Rosenberg, a licensed Iowa attorney, and the respondent testified on the respondent's behalf. Rosenberg testified to his opinion of the respondent as a competent, experienced attorney of good character. The respondent, in his testimony, acknowledged the application of *Iowa Supreme Court Board of Professional Ethics & Conduct v. Apland*, 577 N.W.2d 50 (Iowa 1998), to the documentation of funds received and further testified he has since changed his office practices to conform with this ethical obligation.

Based on the evidence presented and the arguments made, the Commission concluded the respondent's failure to deposit his client's fee payments into his client trust account and failure to provide a contemporaneous accounting to the client upon his depositing of the fees into his office account constituted ethical infractions in violation of DR 9–102(A) and DR 9–102(B)(3). The Commission further concluded a public reprimand was warranted.

**D. Appeal.** Piazza has appealed the recommendation of the Commission. *See* Iowa Ct. R. 35.11 (allowing for an appeal from the

report filed by the Commission). The respondent asserts that, because he had earned the entire fee by the time of his first opportunity to deposit it, his failure to deposit the fee into his client trust account was not a violation of DR 9–102(A) (requiring lawyer to deposit all client funds including advances in an identifiable interest-bearing trust account). Because the fee had been earned, Piazza asserts, it would have been a violation of the ethical rule to place it in the client trust account. *See Apland*, 577 N.W.2d at 55 (discussing whether an attorney was required to deposit a flat fee or advance fee payment in a trust account and noting: "The basic question is: Whose money is it? If it's the client's money, in whole or in part, it is subject to the trust account requirements. If it is the lawyer's money, placing it into a trust account would violate the anti-commingling rule."). Moreover, because he was not required to place the advance fee in his trust account, he argues, he was also not required to provide a contemporaneous accounting at the time of the transfer to his general account. Notwithstanding this argument, Piazza states he now believes a contemporaneous accounting is a good practice, and he routinely provides such accountings to his clients prior to being asked to do so. Based upon these facts and this analysis, Piazza asserts the Board has failed to show any ethical violations by a convincing preponderance of the evidence, and therefore, no sanction, other than an admonition to follow the requirements of *Apland* to reduce the fee agreement to a writing, is warranted.

The Board disputes Piazza's interpretation of the law regarding advance fee payments. It asserts, since at least 1997, the court has repeatedly held that DR 9–102 requires all advance fee payments to be placed in client trust accounts and requires attorneys to provide a contemporaneous accounting to their client of the services provided and

the fees earned when client funds are transferred into their general office accounts. The Board contends a careful analysis of the disciplinary rules and the pertinent case law establishes Piazza violated DR 1–102(A), DR 2–106(A), DR 9–102(A), DR 9–102(B)(3), and DR 9–103(A).

### III. Ethical Violations.

**A. Governing Principles.** The Commission concluded the respondent had violated DR 9–102(A) and DR 9–102(B)(3). In pertinent part, DR 9–102 provides:

> (A) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, except retainer fees paid on a regular and continuing basis, shall be deposited in one or more identifiable interest-bearing trust accounts maintained as set forth in DR 9–102(C). . . . No funds belonging to the lawyer or law firm shall be deposited in trust accounts except as follows:
>
> . . . .
>
> (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
>
> (B) A lawyer shall:
>
> . . . .
>
> (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate account to the client regarding them.

We begin our analysis by determining the type of fee involved in this case. In *Apland,* we discussed the difference between a "general retainer" and a "special retainer." We noted that a general retainer "is a fee for agreeing to make legal services available when needed during a specified time period." *Apland,* 577 N.W.2d at 54. It is a form of an option contract and "the fee is earned by the attorney when paid

regardless of whether or not he actually performs any services for the client." *Id.* Therefore, a general retainer cannot be deposited in a trust account. *Id.* at 55 ("If it is the lawyer's money, placing it into a trust account would violate the anti-commingling rule.").

In contrast, "[a] special retainer covers payment of funds for a specific service. If the client and the attorney agree that the attorney shall receive the special retainer payment in advance of performing the services, then the payment is commonly referred to as an 'advance fee payment.'" *Id.* "[F]ee advances are not earned when paid, and therefore *must* be deposited into the trust account." *Id.* (emphasis added). Such "[f]unds remain the property of the client until the attorney earns them." *Id.* at 56; *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kadenge,* 706 N.W.2d 403, 408 (Iowa 2005) ("all advance fee payments other than general retainer fee payments are refundable and must be placed in a client trust account"). These requirements are incorporated in the new Iowa Rules of Professional Conduct and the client trust account rules. *See* Iowa R. of Prof'l Conduct 32:1.15(c) ("A lawyer shall deposit in a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."); Iowa Ct. R. 45.7(1), (3) (defining advance fees and requiring deposit of advance fee into the client trust account).

There are several strong policy reasons behind these requirements.

> This approach (1) "preserve[s] the client's property from the reach of the lawyer's creditors," (2) "preserve[s] the client's property from possible misappropriation by the lawyer," and (3) "enable[s] the client to realistically dispute a fee where the funds are already in the lawyer's possession by disallowing a self-help resolution by the lawyer and instead preserving the disputed funds intact until the dispute is resolved."

*Apland*, 577 N.W.2d at 56 (quoting Lester Brickman, *The Advance Fee Payment Dilemma: Should Payments Be Deposited to the Client Trust Account or to the General Office Account?*, 10 Cardozo L. Rev. 647, 667 (1989)).

The third policy consideration is further supported by DR 9–102(B)(3), which we determined requires "that lawyers accepting advance fee payments must notify their clients in writing of the time, amount, and purpose of any withdrawal of the fee together with a complete accounting." *Id.* at 59; *accord* Iowa Ct. R. 45.7(4) (same); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera,* 560 N.W.2d 592, 594 (Iowa 1997) ("An attorney may not, in the absence of express direction by the client, withdraw funds from the trust account in order to pay attorney fees.").

In addition, the *Apland* court discussed the concept of a "flat fee." A flat fee " 'embraces all work to be done, whether it be relatively simple and of short duration, or complex and protracted.' " *Apland*, 577 N.W.2d at 56 (quoting ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1389 (1977)); *accord* Iowa Ct. R. 45.10(1) (defining flat fee). A flat fee is "nothing more than an advance fee payment which . . . must be deposited in a client trust account." *Apland*, 577 N.W.2d at 56; *accord* Iowa Ct. R. 45.10(2); *Kadenge*, 706 N.W.2d at 408 (special retainers and flat fees paid in advance must be maintained in a trust account until the fee has been earned). "[P]resuming the flat fee is fair, the attorney is entitled to the entire amount when he or she *completes* the necessary services." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins*, 648 N.W.2d 127, 134 (Iowa 2002) (emphasis added). This rule, however, does not prohibit discharge or withdrawal of an attorney from a case involving a flat fee payment prior to the case's completion. In those

instances, the refundable portion of the fee, if any, depends upon whether the fee was reasonable for all of the services performed prior to the attorney's discharge or withdrawal. *Apland*, 577 N.W.2d at 58; *accord* Iowa Ct. R. 45.10(3).

**B. Application to Facts.** There is no dispute that the fee arrangement in this case involved a flat fee. Although there was no written contract, the evidence establishes Piazza agreed to provide a defense to Alberto-Portillo in state or federal court for a set amount of money regardless of whether the work was short and simple or complex and protracted. *See Apland,* 577 N.W.2d at 56. Therefore, the $5000 payment constituted an advance fee that had to be deposited in Piazza's client trust account. *See id.* at 55–56 (stating a flat fee is an advance fee and requiring all advance fees to be placed in client trust account); *accord Kadenge*, 706 N.W.2d at 408 (same); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs*, 671 N.W.2d 470, 477 (Iowa 2003) ("As a special retainer, the advance fee must be placed in a client trust account and withdrawn only for completed services.").

The respondent contends it would have been improper for him to deposit a fee he had already earned in his trust account. This argument overlooks the fact that it is the nature of the fee that controls its disposition.

An advance fee, by definition, constitutes a fee paid in advance of services to be rendered and must be deposited in a client trust account. *See Apland*, 577 N.W.2d at 56; *Kadenge,* 706 N.W.2d at 408; *accord* Iowa Ct. R. 45.7(3). At the time the initial payment was received by Piazza, no fee had been earned. Piazza cannot rely upon his own determination that he had earned the advance fee by the time an opportune moment came to deposit the fee. Nor can he ignore this court's prior

determination that a flat fee is an advance fee that is earned when the services are *completed* and therefore requires deposit in a client trust account coupled with a contemporaneous accounting to the client prior to withdrawal of such fees from the trust account. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy*, 684 N.W.2d 256, 260 (Iowa 2004) ("Until services are complete, it is possible that at least a portion of the [flat] fee 'would need to be refunded to the client in the event the attorney-client relationship is terminated before the services were rendered.'" (quoting *Frerichs*, 671 N.W.2d at 476)); Alec Rothrock, *The Forgotten Flat Fee: Whose Money Is It and Where Should It Be Deposited?*, 1 Fla. Coastal L.J. 293, 348 (1999) ("Since flat fees are always subject to refund, they are not 'earned' until corresponding services are performed.") [hereinafter "Rothrock"]. As we have previously noted, "[w]e think such a rule not only protects lawyers from potentially unethical conduct, but it also protects the client's interests." *Apland*, 577 N.W.2d at 59. Attorneys may, however, set in the fee agreement "reasonable milestones when their interest in portions of the fee becomes fixed, such that they may . . . withdraw a corresponding amount of fees from the trust account." Rothrock, 1 Fla. Coastal L.J. at 355; *accord* Alec Rothrock, *On Retainers, Flat Fees, and Commingling*, 26 Colo. Law. 83, 84 (1997) ("[F]lat fees . . . should start out in a trust account but must be transferred to the operating account as they are earned, with reasonable promptness."); *see* Iowa R. of Prof'l Conduct 32:1.15(c) ("A lawyer shall deposit in a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."). There is no evidence of such an agreement here.

Based upon the above analysis, we conclude the Board has established, by a convincing preponderance of the evidence, the

respondent violated DR 9–102(A) (failing to put client funds in trust account) and DR 9–102(B)(3) (failing to render an accounting to client). Because Piazza failed to comply with DR 9–102, he necessarily has violated DR 9–103(A), requiring an attorney to maintain books and records sufficient to demonstrate compliance with DR 9–102. We now turn to the other rules the Board contends the respondent violated.

Iowa Code of Professional Responsibility DR 1–102(A) provides that "a lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ; engage in conduct that is prejudicial to the administration of justice; [or] engage in any other conduct that adversely reflects on the fitness to practice law." Iowa Code of Prof'l Responsibility DR 1–102(A)(4), (5), and (6). We have previously held that failure to place advance fee payments in a client trust account constitutes a violation of these rules. *See Kadenge,* 706 N.W.2d at 408 ("We have made abundantly clear a lawyer 'misappropriates client funds in violation of DR 1–102(A)(3), (4), (5), and (6) when special retainers and flat fees paid in advance are treated as money belonging to the lawyer and not maintained in a trust account until the fee has been earned.' " (quoting *Frerichs*, 671 N.W.2d at 475)). Under the flat fee agreement between Piazza and Alberto-Portillo, Piazza was not entitled to a fee until his work was completed. We conclude, therefore, that the Board has established, by a convincing preponderance of the evidence, that Piazza deposited unearned fees in his office account in violation of DR 1–102(A)(4), (5), and (6).[2]

---

[2]The Board also contends Piazza violated DR 2–106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee). The Fee Arbitration Board determined Piazza "had earned every bit of [his] fee" and was, in fact, entitled to more. In the face of this determination, the Board fails to explain clearly in its brief how Piazza violated DR 2–106(A). Therefore, we conclude the Board has waived this argument.

**IV. Sanction.**

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley,* 729 N.W.2d 437, 443 (Iowa 2007).

> In fashioning an appropriate sanction, we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland,* 748 N.W.2d 498, 502 (Iowa 2008). Specific facts and circumstances, including instances of past disciplinary problems, often determine the discipline imposed. *Id.*

As we have discussed, we conclude the Board has proven by a convincing preponderance of the evidence violations of DR 1–102(A), DR 9–102, and DR 9–103(A). The essence of the respondent's ethical violations is his failure to properly deposit and account for advance fees and the premature taking of a flat fee.

In the past, the sanctions for similar violations have ranged from a public reprimand, *see Herrera,* 560 N.W.2d at 595, to suspension, *see Earley,* 729 N.W.2d at 444, to revocation, *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo,* 710 N.W.2d 226, 236–37 (Iowa 2006). In those cases warranting more serious discipline, additional violations or other aggravating circumstances were present. *See Earley,* 729 N.W.2d at 443–44 (neglect resulting in harm to clients, failure to return client's property, trust account violations, and prior reprimand warranted four-month suspension); *D'Angelo,* 710 N.W.2d at 236 (multiple and serious

violations, including deliberate conversion of client funds demands revocation of lawyer's license); *Kadenge*, 706 N.W.2d at 410–11 (neglect of clients' legal matters resulting in harm to clients, intoxicated appearance in court, and violation of trust account regulations warranted eighteen-month suspension); *Frerichs*, 671 N.W.2d at 477–78 (illegal fee contract, trust account violations, neglect of client matter, failure to cooperate with Board, and prior admonition warranted four-month suspension); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 589 N.W.2d 746, 749 (Iowa 1999) (attorney's neglect of two client matters, failure to return clients' property, failure to deposit funds in trust account, and prior public reprimands warranted two-month suspension of law license). Conversely, when the only transgression involved conduct similar to that which occurred here, we have deemed a public reprimand was sufficient. *See Herrera*, 560 N.W.2d at 595 (where attorney deposited unearned advance fees in his office account and failed to keep adequate records but was cooperative and candid with client security commission auditors and took steps to correct his management of client funds in the future, public reprimand was sufficient sanction).

Piazza has no history of ethical violations. Moreover, he testified that he now follows the requirements of *Apland* by entering into written fee agreements and sending out contemporaneous accountings. In light of this, we are convinced he will further conform to all requirements of *Apland*, the Iowa Rules of Professional Responsibility, and the Iowa client trust account rules by placing all fees fitting the definition of an advance fee in his client trust account and not withdrawing any flat fee until it is earned. Thus, our concerns about his fitness to practice law and the protection of society from those unfit to practice law would not be advanced by a harsh sanction.

Nevertheless, Piazza's ethical infractions are clear and "undermine the public's trust in the accountability of the legal profession" and the maintenance of the reputation of the bar as a whole. *Earley*, 729 N.W.2d at 443. For these reasons, we conclude a private admonition, as requested by Piazza, would be an inappropriate disposition of these charges. We accordingly publicly reprimand James P. Piazza, Sr. for failing to comply with the Iowa Code of Professional Responsibility for Lawyers.

**ATTORNEY REPRIMANDED.**

This opinion shall be published.