# IN THE SUPREME COURT OF IOWA

No. 61 / 06-2061

Filed August 24, 2007

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**GREGORY J. HUMPHREY,**

Respondent.

On review of the findings and recommendations of the Supreme Court Grievance Commission.

Grievance Commission found several violations of attorney disciplinary rules and recommended a "private reprimand." **LICENSE SUSPENDED**.

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Mark McCormick, Des Moines, for respondent.

**LARSON**, **Justice**.

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint with our Grievance Commission charging Gregory J. Humphrey with several violations of our Code of Professional Responsibility for Lawyers.[1]  All of the alleged violations arose out of Humphrey's representation of six probate estates.  The commission found that the respondent "made certain errors in conducting his probate practice, [but] the same were not the result of any dishonest acts but were more in the nature of inexperience."  The commission recommended a "private reprimand"[2] with restrictions on any future probate practice by the respondent.  The board filed an application with our court for permission to appeal this decision, as provided by Iowa Court Rule 35.11(2).  We granted the application and now consider the case de novo on the record made before the commission.  *See* Iowa Ct. R. 35.10(1).  We disagree with the sanction proposed by the commission and order that the respondent's license to practice law be suspended for a period of not less than six months.

## I.  *Standard of Review.*

We review attorney disciplinary proceedings under well-established principles.  Our review is de novo.  *See* Iowa Ct. R. 35.10(1); *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 104 (Iowa 2006).  In making that determination,

---

[1]The Iowa Rules of Professional Conduct became effective July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers.  However, the conduct involved in this case occurred prior to the effective date of the new rules.

[2]Under Iowa Court Rule 35.9, the Grievance Commission "shall dismiss the complaint, issue a private admonition, or recommend to the supreme court that the attorney be reprimanded or the attorney's license to practice law be suspended or revoked."  This rule does not provide for a "private reprimand."

" '[w]e give respectful consideration to the Grievance Commission's findings and recommendations, but are not bound by them.'

The Board must prove attorney misconduct by a convincing preponderance of the evidence. This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. Once misconduct is proven, we 'may impose a lesser or greater sanction than the discipline recommended by the grievance commission.' "

*Iowa Supreme Ct. Attorney Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 815 (Iowa 2007) (quoting *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 791–92 (Iowa 2006)).

## II. *Facts.*

According to the record made before the commission, Humphrey has practiced law since 1977 and, at the time of the hearing, was practicing as a partner in a Fort Madison firm. The matters giving rise to the board's complaint were the Eileen B. Glover estate, the William R. Lacke, Jr. estate, the Jesse B. White estate, the Carl O. Dupy estate, the Robert N. Percival estate, and the Teresa J. Sommers estate. These estates were identified as being among those in the Eighth Judicial District that had been open for more than three years. *See* Iowa Code § 633.473 (2003) ("Final settlement shall be made within three years, after the second publication of the notice to creditors, unless otherwise ordered by the court after notice to all interested parties."). Chief Judge James Blomgren assigned District Judge Cynthia Danielson to investigate those estates.

A. *The Glover estate.* This estate was opened on May 1, 2000. During the pendency of the estate, the respondent received five delinquency notices from the clerk of court. A final report, filed on December 23, 2003, stated that all necessary tax returns had been filed. However, no proof of that fact was on file in the estate. The respondent

therefore "resubmitted" the returns in January 2004 to obtain the tax clearances. The respondent characterized his efforts with regard to the tax returns in this estate, and the other five estates, as "resubmitting" the returns. However, we believe, in view of the fact that none of the six estates had tax clearances on file and the respondent was unable to produce copies of returns in any of the estates, that in fact at the time of the judge's inquiry, the returns had not been initially filed as represented.

B. *The Lacke estate.* This estate was opened on March 9, 2000. The clerk of court sent two delinquency notices to the respondent. The respondent, in January of 2004, stated to the judge that tax returns were filed in 2002, but no clearances had been received. He "resubmitted" the returns in 2004, and the estate was closed on January 28, 2005, more than four years after it was opened.

C. *The White estate.* The respondent opened this estate on December 27, 2000. On or about August 1, 2001, he obtained an order for, and received, his full attorney's fee, which he improperly deposited into his business account rather than into a trust account. He received three delinquency notices. After the respondent received one of the notices, he filed a "final report" stating that all tax clearances were on file, but this was not so. He "resubmitted" these returns in 2004, and the estate was closed on August 5, 2004.

D. *The Dupy estate.* The respondent opened this estate on August 6, 2001. During the pendency of this estate he received two delinquency notices. He filed a final report on October 10, 2003, stating that all inheritance and income taxes were cleared. The tax clearances were, in fact, not on file, and the respondent "resubmitted" the returns in July 2004. The estate was closed on November 4, 2004.

E. *The Percival estate.* The respondent opened this estate on June 12, 1998. On September 24, 1998, he received a check for half of his fee, although no inheritance tax return had been prepared. *See* Iowa Ct. R. 7.2(4) (half of attorney fees may be received on preparation of inheritance tax return and federal tax return if required). The respondent received four delinquency notices. Again, when copies of tax returns could not be located, the respondent "resubmitted" them. The estate was closed on November 2, 2004, over six years after it was opened.

F. *The Sommers estate.* The respondent opened the Sommers estate on March 13, 2000. In September 2000, he received his full fee and deposited it into his business account rather than his trust account. After receiving a delinquency notice, the respondent filed a final report stating inheritance and federal income tax returns had been filed. The tax clearances had in fact not been filed, and the respondent "resubmitted" the returns in July 2004. During the pendency of the estate, he received three delinquency notices. The estate was closed on July 30, 2004.

## III. *Violations.*

All six estates languished from a lack of attention until Judge Danielson became involved. In all six estates, the respondent represented that tax clearances had been obtained when, in fact, they had not. The respondent's failure to obtain tax clearances violated DR 6—101(A)(3) (a lawyer shall not neglect a legal matter). These misstatements of fact violated DR 1—102(A)(4) (a lawyer shall not engage in conduct amounting to misrepresentation), DR 1—102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and DR 1—102(A)(6) (a lawyer shall not engage in conduct

adversely affecting the lawyer's fitness to practice law). All of the estates remained open for over three years, despite the lack of any serious complications in any of them, and without any order from the court approving such an extension of time as provided by Iowa Code section 633.473.

In the White, Percival, and Sommers estates, the respondent's fees were deposited into his business account before they were earned, rather than into a trust account. This conduct violated DR 9—102(A) ("All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, except retainer fees paid on a regular and continuing basis, shall be deposited in one or more identifiable interest-bearing trust accounts . . . ."). *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Reedy*, 586 N.W.2d 701, 702-03 (Iowa 1998); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 55 (Iowa 1998).

### IV. *Sanctions.*

Serious neglect lies at the heart of this respondent's problems. When neglect is the primary rule violation, the sanction imposed generally ranges from a public reprimand to a six-month suspension. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007) (citing *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 294 (Iowa 2002)). We consider

> "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law," as well as any aggravating and mitigating circumstances.

*Gottschalk*, 729 N.W.2d at 821 (quoting *Grotewold*, 642 N.W.2d at 294). With respect to the latter consideration, we note that the respondent has not previously been sanctioned by this court.

This case resembles *Earley* in that it "indicates a pattern of neglect that clearly affected his clients' interests and perception of the legal profession." 729 N.W.2d at 443. In addition to neglect, this case also shows a pattern of misstatements in all six estates regarding the filing of the required tax returns.

As we said in *Earley*, "[t]here is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Id.* In the interest of maintaining some consistency, we look to similar cases, although their usefulness is limited because of variations in their facts. In *Earley*, the respondent neglected several cases and failed to deposit funds in his trust account. He further compounded matters by failing to respond to the board's inquiries and failing to return a client's file. We suspended Earley's license for a minimum of four months. *Id.* at 444. In *Iowa Supreme Court Attorney Disciplinary Board v. Neary*, 731 N.W.2d 386 (Iowa 2007), the respondent neglected thirteen estates, received fees prior to court approval, and failed to cooperate in clearing up the neglected matters. We suspended his license for a minimum of twelve months. In *Gottschalk*, 729 N.W.2d 812, the respondent neglected an estate and misrepresented the status of the estate in his final report. He neglected a bankruptcy matter, a dissolution case, and a domestic-relations case. He also misinformed the court about the status of the estate and misinformed his client about his client's dissolution case. Based on these violations, together with his failure to return a client's file, we ordered his license to be suspended for a minimum of one year. *Gottschalk*, 729 N.W.2d at 821-22. In *Iowa Supreme Court Attorney Disciplinary Board v. Walker*, 712 N.W.2d 683 (Iowa 2006), the respondent neglected three estates, represented to the

court that he had complied with all tax requirements, which he had not, and misrepresented to a client regarding the filing of a deed. He also failed to respond on two occasions to the board's complaint. We found his conduct caused harm to his clients in terms of cost and delay. We suspended his license for a minimum of six months. *Walker*, 712 N.W.2d at 686.

## V. *Disposition.*

Based on the respondent's neglect of the six estates, his misrepresentations to the court as to the status of the estates, and our prior cases, we believe the respondent's license to practice law should be suspended for a minimum of six months. Accordingly, his license is suspended indefinitely with no possibility of reinstatement for at least six months. This suspension shall apply to all facets of the practice of law. Iowa Ct. R. 35.12(3). The respondent shall provide all notifications required by Iowa Court Rule 35.21. Upon any application for reinstatement, the respondent shall have the burden to show he has not practiced law during the period of suspension and that he meets the requirements of Iowa Court Rule 35.13. Costs are taxed to the respondent pursuant to Iowa Court Rule 35.25(1).

In addition, as a condition to any reinstatement, the respondent shall satisfy this court that he has associated with an experienced probate lawyer, approved by the chief judge of his district, prior to representation of any probate estates.

**LICENSE SUSPENDED.**