# IN THE SUPREME COURT OF IOWA

No. 08–1700

Filed February 13, 2009

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MARC WILLIAM CASEY,**

Respondent.

On review of the report of the Grievance Commission.

Grievance Commission in disciplinary proceeding recommends suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Marc W. Casey, Dyersville, pro se.

**PER CURIAM.**

This matter comes before the court on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Disciplinary Board alleged the respondent, Marc Casey, violated ethical rules by neglecting client matters, failing to timely disburse funds, misrepresenting the status of an estate to the court, prematurely taking probate fees, and failing to cooperate with the Board. The Grievance Commission found Casey violated the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct and recommended that we suspend Casey's license to practice law for a period of two months.[1] Upon our respectful consideration of the findings of fact, conclusions of law, and recommendation of the Commission, we find the respondent committed several ethical violations and suspend his license to practice law indefinitely with no possibility of reinstatement for three months.

## I. Standard of Review.

Our review of attorney disciplinary proceedings is well established. We review such proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 815 (Iowa 2007). We give the Commission's findings and recommendations respectful consideration, but are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 106 (Iowa 2008). The burden is on the Board to prove attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006).

---

[1]The Iowa Rules of Professional Conduct became effective July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers. Some of the conduct in this case occurred before the effective date of the new rules and some after.

> This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. Once misconduct is proven, we "may impose a lesser or greater sanction than the discipline recommended by the grievance commission."

*Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)).

## II. Factual Background and Prior Proceedings.

Casey has been an attorney for thirty-four years and is currently practicing law in Dyersville, Iowa. The charges in this disciplinary action stem from Casey's representation of clients in a personal injury case and a probate matter.

**A. Trenkamp Personal Injury Action.** On May 13, 2001, Susan Trenkamp was allegedly injured when a porch post fell, hitting her on the head. Trenkamp engaged Casey to represent her. They had no written or oral fee agreement. On May 12, 2003, Casey filed a personal injury claim against the property owners on Trenkamp's behalf.

After the petition was filed, Casey did little to advance the case. He did not file any requests for discovery and took no depositions in the matter. Moreover, he failed to respond to numerous letters and discovery requests by defense counsel. This inaction resulted in opposing counsel filing a motion to compel and, subsequently, a motion for sanctions. Casey also failed to keep Trenkamp advised of the status of her claim and did not inform Trenkamp of an impending trial until a few days before the trial was scheduled to start. On the day of trial, September 1, 2004, the case was settled on the courthouse steps for $20,000. According to Trenkamp, Casey advised her at that time that he would not charge her any fee if she settled, but that she would have to pay him on an hourly basis if they went to trial.

Although the defendants' insurer sent a settlement check to Casey on September 13, 2004, Casey failed to promptly dismiss the case. On December 27, 2004, after the court had granted several continuances, Casey had the plaintiff's case dismissed. Even then, Casey failed to pay out the settlement proceeds to the plaintiff until June 20, 2005, over nine months after the settlement check was received by Casey. Moreover, although his trust account shows checks were issued in 2005 on his client's behalf for court costs and to satisfy a subrogation claim made by Trenkamp's medical insurance provider, Wellmark, these payments were not received by the payees. In 2006, Trenkamp was notified by the State of Iowa that her income tax refund would be withheld pending payment of court costs. Thereafter, Casey paid the court costs. On April 27, 2007, after Wellmark threatened to offset future medical benefits due the Trenkamp family, Casey paid the $4000 subrogation claim from his client trust account, two-and-a-half years after the settlement check was received.

**B.  Schockemoehl Estate.**  In March 2004, Casey was retained as the attorney for the coexecutors of Magdalen Schockemoehl's estate. The coexecutors were two of Magdalen's sons. Magdalen had five children.

Although Casey filed the necessary papers opening the estate, his representation in the probate matter was plagued by delay. On January 31, 2006, Casey advised the district court that he would have the estate resolved in thirty days. This did not happen, and the district court certified the matter as delinquent and ordered a show-cause hearing as to why the coexecutors should not be removed from their positions. After reassurances from Casey and the coexecutors that they would move expeditiously in closing the estate, the court did not remove the coexecutors.

On June 26, 2006, the court signed an order approving the final report and discharging the coexecutors subject to payment of remaining court costs and documentation that the bequest for Catholic masses had been paid. On September 20, 2006, the coexecutors sought to reopen the estate when it was determined Magdalen's interest in certain real property had not been properly transferred. The coexecutors hired a new attorney to assist them in this endeavor. Although the coexecutors believed the estate was closed on June 26, 2006, it was discovered that the district court's contingency—documentation of the payment of the bequest for masses—had never been complied with, and therefore, the estate had never closed. Once these matters were addressed and the real estate was sold, the estate was finally closed.

The Board, having been notified of the delinquency under the probate rules, sent letters to Casey on April 5, 2006, May 16, 2006, and July 13, 2006, regarding his dilatory handling of the matter. Casey failed to respond to these inquiries. During its investigation of the delinquency issue, the Board uncovered other matters of concern. Documents revealed Casey misrepresented the decedent's marital status to the court and to the Iowa Department of Revenue and Finance. Papers prepared, signed, and filed by Casey with the court erroneously stated Magdalen did not have a spouse when, in fact, Magdalen had a surviving spouse, William Schockemoehl, to whom Magdalen's will bequeathed $5000. Casey also prepared tax documents that erroneously stated Magdalen had no surviving spouse. The erroneous court and tax documents were also signed by the coexecutors. In addition, Casey did not give William the required notice regarding taking under the will. *See* Iowa Code §§ 633.237, .304 (2003). William was not paid his bequest under the will while Casey was the attorney for the estate, although he

eventually did take under the will after representation of the estate was undertaken by another attorney.

The Board also discovered that, on April 7, 2006, Casey took his entire fee for the probate matter and placed it in his firm's operating account before the final report was filed on May 31, 2006. This action was contrary to the district court's order, which stated the fees were to be paid consistent with Iowa Supreme Court Probate Rule 7.2. *See* Iowa Ct. R. 7.2(4) (requiring final report be filed prior to attorney receiving the second half of his or her legal fees in a probate matter).

**C. Disciplinary Board's Complaint.** On January 4, 2008, the Board filed a two-count complaint against Casey. Count I involved the Trenkamp personal injury lawsuit, and Count II concerned the Schockemoehl estate. The complaint was amended on June 4, 2008, to add additional claims to Count II.

With regard to Count I, the Board alleged Casey's actions in the Trenkamp matter constituted neglect, failure to promptly disperse proceeds, and failure to respond to a disciplinary inquiry in violation of the Iowa Code of Professional Responsibility for Lawyers DR 6–101(A)(2) and (3) ("A lawyer shall not . . . [h]andle a legal matter without preparation adequate in the circumstances [or] neglect a client matter."); DR 7–101(A) ("A lawyer shall not intentionally fail to seek the lawful objectives of a client . . . ."); and DR 1–102(A)(1), (4), (5), and (6) ("A lawyer shall not violate a disciplinary rule[,] . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation[,] . . . [e]ngage in conduct that is prejudicial to the administration of justice[,] [and] [e]ngage in any other conduct that adversely reflects on the fitness to practice law."). To the extent Casey's actions occurred after the adoption of the Iowa Rules of Professional Conduct on July 1, 2005, the Board

contended Casey violated Iowa Rules of Professional Conduct 32:1.15(d) ("[A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive . . . ."); 32:8.1 ("[A] lawyer . . . shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority . . . ."); 32:8.4(a), (c), and (d) ("It is professional misconduct for a lawyer to . . . violate . . . the Iowa Rules of Professional Conduct[,] . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, [and] engage in conduct that is prejudicial to the administration of justice[.]"); and 32:1.4 ("A lawyer shall . . . reasonably consult with the client about the means by which the client's objectives are to be accomplished[,] keep the client reasonably informed about the status of the matter[,] [and] promptly comply with reasonable requests for information[.]").

With regards to Count II, the Schockemoehl estate, the Board alleged Casey's actions constituted neglect, misrepresentation, premature taking of fees, and failure to respond in violation of DR 6–101(A); DR 7–102(A)(3), (5), (7), and (8) ("[A] lawyer shall not . . . [c]onceal or knowingly fail to disclose that which the lawyer is required by law to reveal[,] . . . [k]nowingly make a false statement of law or fact[,] . . . [c]ounsel or assist a client in conduct that the lawyer knows to be illegal or fraudulent[,] [or] [k]nowingly engage in other illegal conduct or conduct contrary to a disciplinary rule."); and DR 1–102(A)(1), (3), (4), (5), and (6) (subsection (3) prohibits a lawyer from "[e]ngag[ing] in illegal conduct involving moral turpitude"). Again, to the extent Casey's actions occurred after July 1, 2005, the Board contended his actions violated rules 32:1.1 (requiring competent representation); 32:1.2(d) ("A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent . . . ."); 32:1.3 ("A lawyer shall act

with reasonable diligence and promptness in representing a client."); 32:1.5(a) ("A lawyer shall not . . . violate any restrictions imposed by law [on fees]."); 32:1.15(c) ("A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."); 32:3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact . . . previously made to the tribunal by the lawyer."); and 32:8.4(a), (c), and (d).

**D. Grievance Commission Findings and Conclusions.** Although Casey answered the initial complaint with a general denial of any violation, he did not file a timely answer to the amended complaint. This omission resulted in an order from the Commission relieving the Board of any further burden of proof on the additional claims. *See* Iowa Ct. R. 36.7 (failure to file an answer within the specified time results in the admission of allegations contained within the complaint). Casey also failed to respond to discovery responses, and therefore, the Commission imposed sanctions precluding Casey from offering exhibits, testifying, or calling witnesses regarding claims contained in the amended complaint.

Irrespective of these orders, Casey was permitted to testify at the disciplinary hearing. With the exception of the fee agreement, Casey did not refute the Board's evidence in the Trenkamp matter. On that issue, Casey denied offering to waive the fee contingent upon Trenkamp's agreement to settle and forego a trial. Furthermore, although he acknowledged that he did not pursue the matter as he should have, in his defense, Casey contended Trenkamp was a difficult client who was not realistic about the merits of her case. Casey also asserted his belief

the $20,000 settlement was fair. Casey had no explanation, however, for the untimely disbursement of the settlement funds.

With regards to the Schockemoehl estate, Casey again acknowledged that he made mistakes in the handling of the estate. Casey admitted that, when he became aware of a surviving spouse, he took no action to amend the documents filed with the court or department. He attributed this misstep to difficulties between the coexecutors and to their advising him—Casey—that "there was no jointly or commonly owned property" between the decedent and the surviving spouse, their stepfather. Casey also acknowledged taking the entire probate fee prior to the filing of the final report.

Based upon the evidence and testimony presented, the Commission concluded the Board proved by a convincing preponderance of the evidence the allegations made in Counts I and II. Specifically, the Commission concluded the Board proved Casey neglected the Trenkamp and Schockemoehl matters in violation of DR 6–101(A)(2) and (3) and rules 32:1.3 and 32:1.15(d). The Commission also found that Casey's misrepresentations in the Schockemoehl estate constituted violations of DR 1–102(A)(4) and rules 32:3.3(a)(1) and 32:8.4(c). The Commission determined his premature taking of probate fees was a violation of Iowa Court Rule 7.2(4). Casey's failure to respond to the Board's inquiries, all occurring after July 1, 2005, violated rules 32:8.1(b) and 32:8.4(d). The Commission further concluded a two-month suspension of Casey's law license was warranted.

### III. Ethical Violations.

**A. Count I.** Our rules of ethics do not define neglect, but "it has generally been recognized to involve indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious

disregard for the responsibilities a lawyer owes to a client." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004). "It is a form of professional incompetence that often involves procrastination, such as a lawyer doing little or nothing to advance the interests of a client after agreeing to represent the client." *Id.*

The evidence in this case supports the Commission's conclusion that Casey neglected the Trenkamp personal injury matter, and in so doing, he failed to advance the interests of his client. Despite frequent prompting from defense counsel, Casey failed on multiple occasions to respond to requests for discovery. He also failed to keep his client informed of the status of her claim and untimely notified her of the upcoming trial. Such failure to communicate did not serve to advance the client's interests, who, having had limited discussions with Casey, was suddenly faced with making a determination about settlement on the courthouse steps.

More troubling, however, is Casey's neglect of his client once a settlement was reached. His procrastination in obtaining a dismissal of the claim and his untimely disbursement of the settlement proceeds had a detrimental effect on his client's interests. Although there was some evidence that Casey attempted in 2005 to pay the court costs and subrogation lien out of his client trust account, he failed to appropriately respond to his client's complaints that neither the court nor Wellmark had received payment until the state sought to withhold his client's tax refund and Wellmark threatened to offset future medical benefits due the Trenkamp family. Casey's neglect of these matters caused his client additional stress for an unnecessarily lengthy period of time and supports a finding by a convincing preponderance of the evidence that

Casey violated DR 6–101(A)(3) and DR 1–102(A)(5) and (6). *See Moorman*, 683 N.W.2d at 551–52 (multiple acts of procrastination and indifference to the interests of client constituted neglect and amounted to conduct prejudicial to the administration of justice and adversely reflected upon attorney's fitness to practice law); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kadenge*, 706 N.W.2d 403, 408–09 (Iowa 2005) ("[D]ilatory handling of client matters is a disservice not only to the client, but also to the judicial system and is a violation of DR 1–102(A)(5)."). Because ethical rules were violated, Casey's actions necessarily violated DR 1–102(A)(1).

Under the Iowa Rules of Professional Conduct, this same conduct occurring after July 1, 2005, violated rules 32:1.3, 32:1.4, 32:1.15(d), and 32:8.4(a) and (d). *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 700 (Iowa 2008) (handling of estate by leaving it open for a protracted period of time, together with numerous associated violations, constituted conduct prejudicial to the administration of justice in violation of rule 32:8.4(d)).

We have long held that an attorney has an obligation to cooperate with disciplinary authorities and that failure to respond to an investigation committee's request constitutes a separate act of misconduct subjecting the attorney to discipline. *Comm. on Prof'l Ethics & Conduct v. Horn*, 379 N.W.2d 6, 8 (Iowa 1985). Although Casey ultimately responded to the Board's inquiry, his response was not timely and required additional correspondence from the Board. Because the Board's investigation was instituted after July 1, 2005, Casey's untimely response constituted a violation of rules 32:8.1 and 32:8.4(d). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 331 (Iowa 2009) (failure to respond to Board in a timely fashion was prejudicial to

the administration of justice); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 749 N.W.2d 666, 669 (Iowa 2008) (failure to respond to Board demands for information violated rule 32:8.1(b)). However, upon our de novo review, we find the Board failed to establish by a preponderance of the evidence that Casey violated DR 1–102(A)(4), DR 6–101(A)(2), DR 7–101(A), and rule 32:8.4(c) in his handling of the Trenkamp matter.

**B. Count II.** Casey's delinquent handling of the Schockemoehl estate, including his failure to supply the requested documentation to close the estate, supports a finding Casey neglected the estate in violation of DR 6–101(A)(3) and rule 32:1.3. The Board also established by a preponderance of the evidence that Casey violated DR 7–102(A)(3), (5), (7), and (8) and DR 1–102(A)(3) and (4) when he filed papers with the court and the department misrepresenting the marital status of the decedent.

In response to the Board's inquiry, Casey acknowledged he was aware the decedent had a surviving spouse, but attempted to excuse his concealment of this fact on the basis the coexecutors "informed [him] that there was no jointly or commonly owned property." Regardless of this assertion, Casey had an obligation to truthfully prepare documents filed with the court and to provide the surviving spouse with his required notice regarding taking under the will. He had an ethical obligation not to assist his clients—the coexecutors—in conduct he knew to be fraudulent. *See Gottschalk*, 729 N.W.2d at 818 (misrepresentation to the court in estate final report violated DR 1–102(A)(4)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 234 (Iowa 2006) (misrepresentations to court in estate matter constituted violations of DR 1–102(A)(4) and DR 7–102(A)(3) and (5)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293 (Iowa 2002)

(casual, reckless disregard for the truth resulting in misrepresentations to court in estate matter constituted violation of DR 1–102(A)(4)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Romeo,* 554 N.W.2d 552, 554 (Iowa 1996) ("In relation to lawyer conduct, the term 'moral turpitude' connotes behavior involving ' "fraudulent or dishonest intent." ' " (quoting *Comm. on Prof'l Ethics & Conduct v. Cody,* 412 N.W.2d 637, 639 (Iowa 1987))). To the extent this misrepresentation continued uncorrected after July 1, 2005, Casey violated rules 32:3.3(a)(1) and 32:8.4(c).

Iowa Court Rule 7.2(4) restricts an attorney in a probate matter from taking the second half of his court-approved fees until the final report is filed. *See* Iowa Code §§ 633.197, .198 (2005) (requiring lawyers and executors to obtain court approval before taking a probate fee); Iowa Ct. R. 7.2(4). We agree that the Board has proven by a preponderance of the evidence Casey's conduct in taking his entire fee prior to his filing of the final report constituted a violation of rule 32:1.5(a). Moreover, Casey's failure to deposit the fee award in his trust account violated rule 32:1.15(c) (requiring an attorney to deposit unearned fees into the trust account). *Curtis,* 749 N.W.2d at 701. This conduct, along with Casey's neglect and misrepresentations, was improper and, as such, reflects adversely on Casey's fitness to practice law in violation of DR 1–102(A)(6). *See Moorman,* 683 N.W.2d at 553 (finding improper conduct adversely reflects on fitness to practice law). The same conduct was prejudicial to the administration of justice in violation of DR 1–102(A)(5) and rule 32:8.4(d). *See Curtis,* 749 N.W.2d at 702.

Upon our de novo review, we further conclude that, as in the Trenkamp matter, Casey's failure to respond to the Board's inquiries in the Schockemoehl estate constituted a violation of rules 32:8.1 and

32:8.4(d). However, the Board's allegation that Casey violated rule 32:1.1, relating to competence and preparedness in his representation of the estate, is not supported by the evidence in the record.

### IV. Sanctions.

The Commission has recommended Casey's license to practice law be suspended. Casey believes a public reprimand would be sufficient. We conclude under the facts and circumstances a three-month suspension is warranted.

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley,* 729 N.W.2d 437, 443 (Iowa 2007); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza,* 756 N.W.2d 690, 699 (Iowa 2008).

> In fashioning an appropriate sanction, we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland,* 748 N.W.2d 498, 502 (Iowa 2008). "Specific facts and circumstances, including instances of past disciplinary problems, often determine the discipline imposed." *Piazza,* 756 N.W.2d at 699.

When attorney misconduct involves neglect alone, this court has generally imposed discipline ranging from a public reprimand to a six-month suspension. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins,* 733 N.W.2d 661, 670 (Iowa 2007). "When neglect is compounded by other misconduct, a more severe sanction may be

required." *Id.* An important consideration in determining the appropriate sanction is the harm caused by the neglect. *Id.* We turn now to the specific circumstances in this case.

Although there was no evidence Trenkamp would have been able to procure a better settlement had Casey diligently pursued her lawsuit, it is clear Trenkamp suffered some harm from Casey's neglect, specifically his failure to timely disburse the proceeds from the settlement. Years went by before Casey properly distributed the settlement to third-party claimants. During this time, Trenkamp was forced to deal with creditors who eventually threatened to withhold tax refunds and medical benefits. She was also deprived of her share of the settlement for nine months. Likewise, Casey's neglect in failing to promptly and properly close the Schockemoehl estate resulted in harm to his clients through additional delay and attorney fees.[2]

We also have serious concerns about Casey's misrepresentations to the court and to the tax department. We have repeatedly stated that "[o]ur system of justice requires 'absolute reliability and an impeccable reputation for honesty.' " *Gottschalk*, 729 N.W.2d at 818 (quoting *Comm. on Prof'l Ethics & Conduct v. Ramey*, 512 N.W.2d 569, 571 (Iowa 1994)). "At its most basic level a court must rely, not alone on the honesty of lawyers, but also on the reliability of factual representations submitted to the court." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ackerman*, 611 N.W.2d 473, 474 (Iowa 2000). "Misrepresentation to the court constitutes a serious breach of professional ethics, warranting a more severe sanction than neglect." *Gottschalk*, 729 N.W.2d at 821.

---

[2]Although there is evidence in the record that real property was not appropriately transferred, there was no allegation that this error was related to Casey's handling of the estate.

Another major concern we have with Casey's conduct is his premature taking of a probate fee and his failure to deposit the fee into a trust account. Although in the past we have revoked an attorney's license when the attorney deliberately converted a client's funds, we have not done so when an attorney has a " 'colorable future claim to the funds.' " *Curtis*, 749 N.W.2d at 704 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 97 (Iowa 2006)). Casey had a colorable claim to these fees, once the estate was closed. Therefore, while the premature appropriation was a serious one, it does not require revocation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 738 N.W.2d 617, 620 (Iowa 2007) (neglect, misrepresentation, and depositing of probate fees in business account prior to the fees being earned warranted suspension).

As previously noted, in determining the appropriate sanction, prior discipline is an aggravating factor to be considered. *See Piazza*, 756 N.W.2d at 699. In an unrelated proceeding, Casey was privately admonished by the Board for neglecting a client's matter. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski*, 606 N.W.2d 11, 14 (Iowa 2000) (considering private admonition in imposing discipline).

In crafting an appropriate sanction, we look to prior similar cases while remaining cognizant of their limited usefulness due to the variations in their facts. We also consider the goals of discipline: deterrence, protection of the public, maintenance of the reputation of the Bar, and the actor's fitness to practice law. *Humphrey*, 738 N.W.2d at 621. In this case, if the neglect evinced by Casey constituted his only misconduct, under the circumstances, we would be inclined to order a public reprimand. *See Tompkins*, 733 N.W.2d at 670 (neglect of two client matters and failure to respond to Board warranted public

reprimand). However, based upon his misrepresentations and premature taking of probate fees, we conclude a more serious sanction of a three-month suspension is warranted, especially in light of our goals of deterrence and maintenance of the reputation of the Bar. *Cf. Humphrey*, 738 N.W.2d at 619–21 (neglect of and misrepresentations in six estates and premature taking of probate fees in three estates warranted six-month suspension); *Earley*, 729 N.W.2d at 444 (neglect of several cases, trust account violation, and failure to respond to Board's inquiry warranted four-month suspension); *Grotewold*, 642 N.W.2d at 293 (neglect of probate estate and small claims matter, misrepresentation, and failure to respond to Board's inquiry warranted sixty-day suspension); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 656–57 (Iowa 2001) (neglect of two client matters accompanied by misrepresentation to the court and prior discipline warranted four-month suspension); *Horn*, 379 N.W.2d at 9–10 (neglect of probate matter, misrepresentations, and failure to cooperate with Board warranted three-month suspension).

### V. Conclusion.

Based upon Casey's neglect of the personal injury and estate cases, his misrepresentations to the court and department, his premature taking of probate fees, and his failure to promptly respond to the Board's investigation, we believe Casey's license to practice law should be suspended for a minimum of three months. Accordingly, his license is suspended indefinitely with no possibility of reinstatement for three months. This suspension shall apply to all facets of the practice of law. Iowa Ct. R. 35.12(3). The respondent shall provide all notifications required by Iowa Court Rule 35.22. Upon any application for reinstatement, Casey shall have the burden to show he has not practiced

law during the period of suspension and that he meets the requirement of Iowa Court Rule 35.13. Costs are taxed to Casey pursuant to Iowa Court Rule 35.26(1).

**LICENSE SUSPENDED.**

This opinion shall be published.