# IN THE SUPREME COURT OF IOWA

No. 09–1808

Filed July 30, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**IVAN J. ACKERMAN,**

Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends attorney's license be suspended for ninety days. **LICENSE SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

Ivan J. Ackerman, Waverly, pro se.

**BAKER, Justice.**

The complainant, Iowa Supreme Court Attorney Disciplinary Board, filed charges against the respondent, Ivan J. Ackerman, alleging violations of the Iowa Code of Professional Responsibility for Lawyers and Iowa Rules of Professional Conduct in two separate probate matters.[1] The parties entered into a stipulation with regard to Ackerman's ethical violations. The Iowa Supreme Court Grievance Commission found Ackerman violated our ethical rules and recommended a ninety-day suspension. Upon our de novo review, we concur in the commission's conclusion that the respondent violated our ethical rules, and we suspend his license to practice law indefinitely with no possibility of reinstatement for ninety days.

## I. Standard of Review.

Our review of attorney disciplinary proceedings is de novo. Iowa Ct. R. 35.10(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 304 (Iowa 2009). "The commission's findings and recommendations are given respectful consideration, but we are not bound by them." *Earley*, 774 N.W.2d at 304. "The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence." *Id.* "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). Once we find the misconduct has been proven, "we 'may impose a lesser or greater sanction than the discipline recommended by the grievance commission.'" *Id.* (quoting (rule 35.10(1)).

---

[1]The Iowa Rules of Professional Conduct became effective July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers. To the extent that some of the conduct alleged occurred both before the effective date of the new rules and some after, both sets of rules apply.

## II. Factual Background.

On June 12, 2008, the board filed its complaint against Ackerman. The complaint alleged ethical violations in two probate matters. Essentially, the complaint alleged the respondent violated our ethical rules by his dilatory handling of the probate matters, which resulted in numerous notices of delinquency, his misrepresentations pertaining to the status of the matters, and his premature taking of probate fees in one of the estates. On October 28, 2009, the parties entered into a stipulation to facts, ethical violations, and discipline wherein Ackerman stipulated to the alleged violations, the board acknowledged certain mitigating factors, and the parties agreed a ninety-day suspension was warranted. The parties waived a hearing, and the matter was submitted to a panel of the grievance commission on the stipulation. On December 7, 2009, the commission filed its findings of fact, conclusions of law, and recommendations, finding the alleged ethical violations occurred and recommending a ninety-day suspension.

Upon our de novo review, we adopt the parties' stipulated facts pertaining to Ackerman's ethical violations. The stipulation and the commission's findings are discussed herein.

**A.     Smith Estate.** In April 1995, Ackerman filed, in Butler County, a petition for probate of will on behalf of the estate of Jerry J. Smith. After filing the affidavits of publication and mailing notices to the beneficiaries, Ackerman filed inventory reports in September and October 1995. From the beginning of the administration of the estate to the time the estate was closed, the clerk of court issued eighteen probate delinquency notices to Ackerman and filed five reports of delinquency notices to the state court administrator. In addition, in a January 2002 final report, Ackerman misrepresented the status of the estate, asserting that all statutory

requirements pertaining to taxes had been satisfied. The Iowa inheritance tax clearance was not filed until March 2008.

Beginning in 2008, Judge Foy was appointed to monitor delinquent estates in Butler County. Judge Foy set a number of review hearings to monitor Ackerman's progress toward closing the estate. Ultimately, the estate remained open for more than fourteen years before it was finally closed in October 2009.

The parties stipulated that these actions constituted violations of the Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(1) ("A lawyer shall not . . . [v]iolate a disciplinary rule."), DR 1–102(A)(4) ("A lawyer shall not . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."), DR 1–102(A)(5) ("A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice."), DR 1–102(A)(6) ("A lawyer shall not . . . [e]ngage in any other conduct that adversely reflects on the fitness to practice law."), DR 6–101(A)(3) ("A lawyer shall not . . . [n]eglect a client's legal matter."), DR 7–101(A)(1) ("A lawyer shall not intentionally . . . [f]ail to seek the lawful objectives of a client . . . ."), and DR 7–101(A)(3) ("A lawyer shall not intentionally . . . [p]rejudice or damage a client . . . .").

The parties also stipulated that these actions violated the Iowa Rules of Professional Conduct 32:1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."), 32:8.4(a) ("It is professional misconduct for a lawyer to . . . violate . . . [a disciplinary rule.]"), and 32:8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]"). The commission adopted the parties' stipulation and issued findings that the stipulated ethical violations occurred.

**B.    Beu Estate.**  In February 1998, Ackerman was appointed the attorney for the estate of Bertha Beu and filed this probate matter in Bremer County.  After the publication of notice to creditors was made in February 1998 and the inventory was filed in November 1998, partial distributions of the estate were made to the beneficiaries in May 1998, October 1998, July 1999, October 1999, and January 2000.

Beginning in January 2000, Ackerman began communicating with the beneficiaries with regard to the final distribution of the estate.  He sent letters to the beneficiaries in January 2000, May 2000, and March 2001.  With regard to the March 2001 letter, Ackerman included a final distribution check and stated no further distributions would be forthcoming.  Subsequently, Ackerman did not respond to requests for information about beneficiary tax liability.  In February 2004, Ackerman communicated with the beneficiaries, stating the estate was ready to be closed, all assets had been sold and divided, and they would receive an accounting of income and expenses by March 10, 2004.  This letter was Ackerman's final communication with the beneficiaries.

In June 2001, November 2001, and December 2002, Ackerman filed interlocutory reports representing various estimated dates of closing.  On several occasions, the district court ordered deadlines for the filing of final reports.  When Ackerman failed to satisfy these deadlines, notices of delinquency were filed in December 2003, June 2005, June 2006, June 2007, August 2007, December 2007, and February 2008.  In August 2005, Ackerman filed a final report.  In July 2006, Ackerman filed a supplemental final report and attached an accounting.  However, as of the date of the parties' stipulation, the estate remained open even though it was statutorily required to be closed by February 2001.

In November 1999, the district court entered an order setting Ackerman's entire fee at $43,692, which was disbursed to him and his law firm in January 2000. The taking of the entire fee at this time was contrary to court rules.

The parties stipulated that Ackerman's actions constitute violations of DR 1–102(A)(1), (4), (5) and (6); DR 2–106(A) ("A lawyer shall not . . . collect an illegal . . . fee."); DR 6–101(A)(3); and DR 7–101(A)(1) and (3). Moreover, the parties stipulated that these actions violated rules 32:1.3, 32:8.4(a), and 32:8.4(d). The commission approved the parties' stipulation and issued findings that the stipulated ethical violations occurred.

### III. Ethical Violations.

Under our rules prohibiting neglect, an attorney must advance and protect his clients' interests. *Earley*, 774 N.W.2d at 307. "[A]n attorney [must] attend to matters entrusted to his care and . . . do so in a reasonably timely manner." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 205 (Iowa 2007); *accord Earley*, 774 N.W.2d at 307. "Neglect is more than negligence, and it often involves procrastination, 'such as a lawyer doing little or nothing to advance the interests of a client.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 817 (Iowa 2007) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 552 (Iowa 2004)).

We agree with the commission that Ackerman's dilatory handling of these two estates, despite repeated delinquency notices and inquiries from beneficiaries, evidences serious neglect in violation of DR 6–101(A)(3) and rule 32:1.3. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 283 (Iowa 2009) (dilatory handling of estate violated Iowa Court Rule 32:1.3); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 59 (Iowa 2009) (neglect of probate matters violated DR 6–101(A)(3)). We

also agree that his failure to diligently perform the work necessary to close these estates supports a finding that Ackerman intentionally failed to seek the lawful objectives of his clients, which consequently resulted in damage to his clients.[2] *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Reese*, 657 N.W.2d 457, 460 (Iowa 2003) (holding failure to meet the probate deadlines in nine separate estates violated DR 7–101(A)). Moreover, Ackerman's dilatory conduct, resulting in numerous delinquency notices and eventual intervention by a specially appointed judge, evidences conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5) and rule 32:8.4(d).[3] *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010) (holding actions that hamper the efficient and proper operation of the courts are prejudicial to the administration of justice).

We also agree Ackerman violated DR 1–102(A)(4), (5) and (6), as well as rule 32:8.4(d), when he misrepresented the status of the tax matters to the district court in the Smith estate and misrepresented the amount of time it would take to complete the remaining work in the Beu estate to the beneficiaries and the court. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v.*

---

[2]Although we are satisfied, based upon the excessive length of time the estates remained open, that the estates necessarily suffered some damage from the delays, neither the stipulation nor the record specifically addresses this issue. It is important to note, however, that it is not always possible to imply such damages. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 271–72 (Iowa 2010) (rejecting commission's recommendation that attorney refund unearned funds due to the lack of specificity in the stipulation and absence of evidence in the record to determine the degree of harm caused by attorney's actions), *with Comm. on Prof'l Ethics & Conduct v. Blomker*, 379 N.W.2d 19, 22 (Iowa 1985) (finding estate was damaged and attorney violated DR 7–101(A)(3) when evidence established executor of the estate was required to pay interest due on late filing and to employ new attorney to complete the process of closing the estate).

[3]Because the board has proven other rule violations, we do not consider DR 1–102(A)(1) and rule 32:8.4(a), which provide that a lawyer shall not violate a disciplinary rule, as separate violations. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010).

*Walker*, 712 N.W.2d 683, 684–85 (Iowa 2006) (misrepresentation violates DR 1–102(A)(4), (5) and (6)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 738 N.W.2d 617, 620 (Iowa 2007) (same). Due to Ackerman's misrepresentations, the court was misadvised about the status of the estates, and the estates remained open for an inexcusable amount of time to the detriment of the beneficiaries and the legal system.

Finally, we agree Ackerman's action in taking the entire fee in the Beu estate violated our ethical rules. Iowa Court Rule 7.2(4) (1999) stated:

> One half of the fees for ordinary services may be paid when the federal estate tax return, if required, and Iowa inheritance tax return, if required, are prepared. When an inheritance tax return is not required, an inheritance tax clearance must be filed. When a federal estate tax return is not required, the one-half fee may be paid when the Iowa inheritance tax return is prepared or, when it is not required, when the inheritance tax clearance is filed. The remainder of the fees may be paid when the final report is filed and the costs have been paid. The schedule for paying fees may be different when so provided by order of the court for good cause.[4]

Under rule 7.2(4), when Ackerman took the entire $43,692 fee in November 1999, he was entitled to take only one half of that amount. He was not entitled to the remaining one half until the final report was filed in August 2005. Iowa Court Rule 7.2(4) was enacted to promote the efficient administration of estates to ensure that the work was done prior to an attorney being paid. We also believe that court rules define the " 'well-understood norms and conventions of practice.' " *Templeton*, 784 N.W.2d at 768 (quoting 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 65.6, at 65–16 (3d ed. 2009 Supp.)); *see also* Iowa Code § 602.4201 (stating purposes of rules of procedure are to simplify the proceedings and promote the speedy

---

[4]Rule 7.2(4) was amended in November 2004 and that amendment was effective February 1, 2005. While the amendment is not relevant to this case, it would also have not changed the analysis as the new rule still requires the final report be filed before the remainder of the fees may be paid.

determination of litigation). By taking his fees prematurely in violation of the rule, we hold that Ackerman's actions were prejudicial to the administration of justice. Thus, Ackerman's premature taking of probate fees contrary to our court rules constituted an illegal fee in violation of DR 2–106(A), was prejudicial to the administration of justice, and exhibited a lack of fitness to practice law in violation of DRs 1–102(A)(5) and (6), as well as rule 32:8.4(d). *See Casey*, 761 N.W.2d at 61 (finding a violation of rule 7.2(4) is a violation of DRs 1–102(A)(5), (6) and rule 32:8.4(d)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jay*, 606 N.W.2d 1, 4 (Iowa 2000) (withdrawal of fees contrary to Iowa R. Probate P. 2(d), now rule 7.2(4), violates DR 2–106(A)).

### IV. Sanctions.

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Earley*, 774 N.W.2d at 308. When fashioning a sanction, we examine several factors, including "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009). We also examine both mitigating and aggravating circumstances. *Earley*, 774 N.W.2d at 308.

The sanction " 'must be tailored to the specific facts and circumstances of each individual case.' " *Marks*, 759 N.W.2d at 332 (quoting *Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981)). Significant distinguishing factors for punishment include " 'the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.' " *Id.* (quoting *Iowa Supreme Ct. Att'y*

*Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006)). When neglect is the principal violation, discipline usually ranges from a public reprimand to a six-month suspension. *Wagner*, 768 N.W.2d at 287.

We find several cases illustrative of appropriate discipline in the form of suspension with regard to the handling of probate and other matters. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293, 296 (Iowa 2002), we imposed a sixty-day suspension for failure to meet deadlines and to close an estate for nearly nine years, misrepresentation of the status of the estate to the court, and failure to file a timely answer in the case. In *Casey*, 761 N.W.2d at 63, we imposed a three-month suspension for neglect, misrepresentations to the court, premature taking of probate fees, mishandling of a client trust account, and failure to respond to the board's inquires. In *Humphrey*, 738 N.W.2d at 620, we imposed a six-month suspension for neglect of six probate estates, misrepresentations, and the depositing of probate fees in a business account before the fees had been earned. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 381–82 (Iowa 2002), we imposed a sixty-day suspension for neglect, misrepresentation, failure to respond to the trial court's order, and failure to respond to the board. In *Marks*, 759 N.W.2d at 332–33, we imposed a thirty-day suspension for neglect of probate matters and failure to cooperate with the board.

Based on these cases, we believe the ninety-day suspension recommended by the commission to be appropriate in light of the misconduct in the instant action. We believe this suspension takes into account the mitigating factors of Ackerman's battle with cancer, as well as his extensive community service. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 408 (Iowa 2007) (fact that respondent was a

highly respected member of the bar and the community considered mitigating factors); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs*, 671 N.W.2d 470, 474–75, 477–78 (Iowa 2003) (considering respondent's battle with cancer and health problems as mitigating factors).

## V. Disposition.

We suspend Ackerman's license to practice law in this state indefinitely with no possibility of reinstatement for ninety days. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3). Upon any application for reinstatement, Ackerman must establish that he has not practiced law during the suspension period and has complied in all ways with the requirements of Iowa Court Rule 35.13. Ackerman shall also comply with the notification requirements of Iowa Court Rule 35.22. We tax the costs of this action to Ackerman pursuant to Iowa Court Rule 35.26.

**LICENSE SUSPENDED.**